UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVE SEGAL, NICK HAMMER, ROBIN
HOUGDAHL, and TODD TERRY, on
behalf of themselves and all others similarly
situated,

                    Plaintiffs,

     v.

RAYMOND BITAR; NELSON BURTNICK;
FULL TILT POKER, LTD.; TILTWARE, LLC;
VANTAGE, LTD; FILCO, LTD.; KOLYMA
CORP. A.V.V.; POCKET KINGS LTD.;
POCKET KINGS CONSULTING LTD.;
RANSTON LTD.; MAIL MEDIA LTD.;
HOWARD LEDERER; PHILLIP IVEY JR.;
CHRISTOPHER FERGUSON; JOHNSON
JUANDA; JENNIFER HARMAN-TRANIELLO;
PHILLIP GORDON; ERICK LINDGREN;
ERIK SEIDEL; ANDREW BLOCH; MIKE
MATUSOW; GUS HANSEN; ALLEN
CUNNINGHAM; PATRIK ANTONIUS and
JOHN DOES 1-100,

                   Defendants.

Case No.: 11-CV-4521 (LBS)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
APPLICATION FOR A PRELIMINARY INJUNCTION IMPOSING A
CONSTRUCTIVE TRUST, AN ACCOUNTING AND EXPEDITED DISCOVERY**

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

RELEVANT FACTUAL SUMMARY ................................................................................ 4

ARGUMENT ....................................................................................................................... 6

I.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION
      IMPOSING A CONSTRUCTIVE TRUST AND FREEZING ASSETS
      PENDING A TRIAL ON  THE MERITS .......................................................... 6

      A.    The Imposition Of A Constructive Trust Is An Appropriate Remedy ................... 7

      B.    Plaintiffs Have Satisfied The Standard for Issuance Of A Preliminary
            Injunction ........................................................................................................ 7

            1.    Plaintiffs Will Be Irreparably Harmed If No Injunction Is Issued ............. 8

            2.    The Balance Of The Hardships Tips Strongly In Plaintiffs' Favor ........... 9

            3.    Plaintiffs Have a "Strong or Substantial" Likelihood of Success
                  on the Merits ........................................................................................ 10

            4.    Plaintiffs Have Raised Sufficiently Serious Questions Going
                  to the Merits ........................................................................................ 11

II.   PLAINTIFFS ARE ENTITLED TO AN IMMEDIATE EQUITABLE
       ACCOUNTING ............................................................................................ 12

III.  PLAINTIFFS SHOULD BE PERMITTED TO TAKE LIMITED EXPEDITED
      DISCOVERY TO PROVIDE THE COURT WITH A MORE COMPLETE
      RECORD ...................................................................................................... 14

IV.   NO BOND IS REQUIRED TO BE POSTED BY PLAINTIFFS ..................................... 15

V.    CONCLUSION ................................................................................................ 16

## TABLE OF AUTHORITIES

**CASES**                                                                                  **Page(s)**

*A. Ferlito Farms, Inc. v. Empire Fresh Cuts, LLC,*
    No. 10-CV-1044, 2010 U.S. Dist. LEXIS 104648 (N.D.N.Y. Sept. 30, 2010) ..........................14

*AIM International Trading, LLC v. Valcuine SpA,*
    188 F. Supp. 2d 384 (S.D.N.Y. 2002) .......................................................................................8, 11

*Alter v. Bogoricin,*
    No. 97-0662, 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) .........................................................13

*Applied Digital Data Systems Inc. v. Milgo Electronics Corp.,*
    425 F. Supp. 1145 (S.D.N.Y. 1977) ...........................................................................................10

*Arthur Guinness & Sons, PLC v. Sterling Publishing Co.,*
    732 F.2d 1095 (2d Cir. 1984) .......................................................................................................2

*Bausch & Lomb, Inc. v. Alcon Laboratories, Inc.,*
    64 F. Supp. 2d 233 (W.D.N.Y. 1999) .........................................................................................13

*Beatty v. Guggenheim Exploration Co.,*
    225 N.Y. 380 (1919) .....................................................................................................................9

*Blom USA v. Pictometry International Corp.,*
    757 F. Supp. 2d 238 (W.D.N.Y. 2010) .......................................................................................14

*Bridgeport Coalition for Fair Representation v. City of Bridgeport,*
    26 F.3d 271 (2d Cir. 1994) ............................................................................................................7

*Deckert v. Independence Shares Corp.,*
    311 U.S. 282 (1940) .......................................................................................................................9

*Doctor's Associates v. Distajo,*
    107 F.3d 126 (2d Cir. 1997) ........................................................................................................14

*Doctor's Associates v. Stuart,*
    85 F.3d 975 (2d Cir. 1996) .....................................................................................................14, 15

*ESI, Inc. v. Coastal Power Production Co.,*
    995 F. Supp. 419 (S.D.N.Y. 1998) ..............................................................................................13

*Fido's Fences Inc. v. Canine Fence Co.,*
    309 Fed. Appx. 480 (2d Cir. 2009) .............................................................................................14

*Federal Savings & Loan Insurance Corp. v. Dixon,*
  835 F.2d 554 (5th Cir. 1987) ...................................................................................6, 12

*FTC v. H.N. Singer, Inc.,*
  668 F.2d 1107 (9th Cir. 1982) ....................................................................................6, 7

*Hamilton Watch Co. v. Benrus Watch Co.,*
  206 F.2d 738 (2d Cir. 1953)...........................................................................................11

*Israel v. Chabra,*
  12 N.Y.3d 158 (2009) ......................................................................................................9

*King v. Civil Service Commission of City of New York,*
  382 F. Supp. 1128 (S.D.N.Y. 1974)..............................................................................11

*Maryland Casualty Co. v. Realty Advisory Board on Labor Relations,*
  107 F.3d 979 (2d Cir. 1997)...........................................................................................15

*Medtronic, Inc. v. Gibbons,*
  527 F. Supp. 1085 (D. Minn. 1981), *aff'd,* 684 F.2d 565 (8th Cir. 1982) ...................11

*New York Land Co. v. Republic of Philippines,*
  634 F. Supp. 279 (S.D.N.Y. 1986)..................................................................................8

*Quantum Corporate Funding, Ltd. v.*
*Assist You Home Health Care Services of Virginia,*
  114 F. Supp. 2d 241 (S.D.N.Y. 2001)............................................................................7

*Reebok International v. Marnatech Enterprises,*
  970 F.2d 552 (9th Cir. 1992) ..........................................................................................7

*Republic of Panama v. Air Panama Internacional, S.A.,*
  745 F. Supp. 669 (S.D. Fla. 1988) .................................................................................8

*Republic of Philippines v. Marcos,*
  806 F.2d 344 (2d Cir. 1986).............................................................................................8

*Republic of Philippines v. Marcos,*
  862 F.2d 1355 (9th Cir. 1988) ....................................................................................2, 9

*SEC v. Cavanaugh,*
  1 F. Supp. 2d 337 (S.D.N.Y.), *aff'd,* 115 F.3d 129 (2d Cir. 1998) .............................13

*SEC v. Credit Bancorp, Ltd.,*
  No. 99-11395, 2010 U.S. Dist. LEXIS 20836 (S.D.N.Y. Mar. 4, 2010)......................2

*SEC v. Gonzalez de Castilla,*
   184 F. Supp. 2d 365 (S.D.N.Y. 2002)........................................................13

*SEC v. Prater,*
   289 F. Supp. 2d 39 (D. Conn. 2003)........................................................13

*Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.,*
   545 F. Supp. 2d 260 (E.D.N.Y. 2008) .....................................................10

*University of Texas v. Camenisch,*
   451 U.S. 390 (1981)..................................................................................11

## <u>STATUTES & RULES</u>

Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C.S. § 1961, *et seq.*..........2.

2006 Unlawful Internet Gambling Enforcement Act, 18 U.S.C.S. § 5361, *et seq.* ........................5

Federal Rules of Civil Procedure
   Rule 65 .................................................................................................1, 14

## <u>OTHER AUTHORITIES</u>

*Black's Law Dictionary* (7th ed. 1999)........................................................13

13 William J. Moore, *Moore's Federal Practice* – Civil § 65.36 (2004).....................................10

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, plaintiffs submit this Memorandum of Law in Support of its application for (1) preliminary injunction imposing a constructive trust over balances in the accounts of Full Tilt Poker's U.S. accountholders, with funds to be held in a U.S.-based escrow account; (2) an accounting of same; and (3) limited expedited discovery.

## INTRODUCTION

This case concerns the Full Tilt Poker umbrella (for simplicity, all defendants collectively will be referred to herein as "Full Tilt"), a group of entities and persons engaged in the business, *inter alia*, of providing online card rooms for poker players.  Until April 15 of this year, U.S. players could open and hold accounts with Full Tilt, and could deposit funds, withdraw funds or play internet poker through Full Tilt with real money.  However, people and entities controlling Full Tilt caused credit card and e-check transactions to be processed through front companies in violation of federal law, and on April 15, 2011, the United States Attorney for the Southern District of New York unsealed an indictment and commenced a civil forfeiture action.  The Government did not prevent, and has specifically permitted and encouraged, Full Tilt to redistribute the account balances to U.S. players, and Full Tilt has said it will do so – but it has not.

Recent events require immediate equitable relief.  On June 29, the gaming commission of Alderney, the tiny British Channel Island where Full Tilt holds a gaming license, suspended its license, and overnight Full Tilt shut down its internet card rooms (which had remained open since April to non-U.S. players and to U.S. players not playing for real money).  On the night of June 30, the Los Angeles Times reported that European entities would buy Full Tilt.  Current reports suggest that the U.S. accountholders will be made whole.  However, that promise has been made for months and not fulfilled, and now the sale threatens for the first time to take the

U.S. players' account balances out of the hands of the U.S. persons who ultimately control Full Tilt and all its affiliates and subsidiaries, and transfer the funds to persons outside the United States. This development presents a heightened, immediate risk that the funds, and the data necessary to return such funds to the accountholders, will be permanently lost.

Plaintiffs assert three causes of action on behalf of the Class: conversion under common law against all defendants, and RICO and RICO conspiracy against a smaller group of defendants. Class Action Complaint and Action Under 18 U.S.C.S. § 1961, *et seq.*, *Segal v. Bitar*, No. 11-cv-4521 (S.D.N.Y. June 30, 2011) (filed as Exhibit A to Affidavit of Thomas H. Burt).

In this motion, plaintiffs seek entry of a preliminary injunction for the imposition of a constructive trust over all U.S. accountholders' account balances, with funds to be held in an escrow account in the United States. Since April 15, 2011, Full Tilt has asserted that it should and will return these moneys to the accountholders, but it continues to wrongfully hold the funds and has not announced any plan to distribute them, and now intends to sell to foreign buyers.

Courts have the power to preserve the "status quo" by freezing assets to prevent defendants from "further depleti[ng] funds pending a final judgment." *SEC v. Credit Bancorp, Ltd*, No. 99-11395, 2010 U.S. Dist. LEXIS 20836, at *6 (S.D.N.Y. Mar. 4, 2010) (citations omitted); *see also Arthur Guinness & Sons, PLC v. Sterling Publ'g Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984) ("The purpose of a preliminary injunction is to preserve the status quo pending the final determination of a dispute."); *Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988) ("A court has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies."). This is precisely what plaintiffs seek to do here, as there is a palpable danger that some defendants will seek to

hide assets, flee, or both, or that the buyers of Full Tilt will move the funds out of the reach of U.S. Courts and refuse to return the funds to U.S. accountholders. The defendants are all engaged in an internet gambling enterprise, run through many, including entities located offshore in banking and internet gambling havens such as the Channel Islands and Aruba. Two of the defendants have been criminally charged. Neither has returned to the U.S. to face charges, although one is a U.S. resident, and both may be on the run. Further, the non-U.S. business that Full Tilt continued after Black Friday was shuttered by the Channel Islands licensor and regulator on June 29, 2011.

There is no danger that an asset freeze will burden Full Tilt's business, because its business is on hold. Full Tilt has ceased all real money gaming operations. Also, it has not allowed US. players to utilize or withdraw the funds in their account since April 15, 2011. Unless Full Tilt has already raided or improperly commingled these funds, it is already holding them and can just as easily escrow them in a U.S. account.

This is one of those cases in which the imposition of a constructive trust and accounting is the only way to preserve the accountholders' remedies. The case is, simply put, about the right to a set of assets in existence, and if those assets disappear, the accountholders' ability to be made whole is in serious doubt. Since the assets are not currently in use by anyone, placing them in a virtual lockbox is no burden to anyone. An accounting is a necessary adjunct to the constructive trust, to ensure that a record of the contents of each account belonging to U.S. players is made now and maintained. If this information is lost or destroyed during the litigation, it will be difficult or impossible to reconstruct.

Finally, plaintiffs also request expedited discovery to protect accountholders from further loss and damage by identifying the assets in question and their location, and to develop

additional evidence that will enhance the Court's ability to fashion appropriate relief.

Tiltware LLC, is a company registered in the State of California, with offices at 10866 Wilshire Boulevard, Floor 4, in  Los Angeles CA 90024-4338.  Plaintiffs believe that Tiltware LLC retains ultimate control over the U.S. accountholders' funds.  Plaintiffs therefore contend that service by delivery to Tiltware LLC's offices by the date ordered by the Court, shall be deemed good and sufficient service.

## RELEVANT FACTUAL SUMMARY

For a full recitation of the facts underlying plaintiffs' claims, plaintiffs respectfully refer the Court to plaintiffs' Complaint, dated June 30, 2011, which is attached as Exhibit A (and referenced in the form "Compl. ¶ __") to the concurrently filed Affidavit of Thomas H. Burt in Support of Plaintiffs' Application.

Plaintiffs are a proposed class of U.S. residents and "real-money" internet poker players who held accounts ("Player Accounts") on April 15, 2011, with the Full Tilt Poker internet gambling operation.  Ordinarily, plaintiffs were free to draw on their Player Accounts to play poker in Full Tilt card rooms, using Full Tilt software, available exclusively from the Full Tilt website.  Plaintiffs were also free to deposit and withdraw funds from their Player Accounts. But, since April 15, 2011, Player Accounts have been frozen by Full Tilt, and plaintiffs have been deprived of access to their own funds.  Compl. ¶ 1.

On April 15, 2011, the U.S. Attorney for the Southern District of New York seized the assets of the "Big Three" internet poker companies operating in the United States (Full Tilt Poker, PokerStars, and Absolute Poker).  *See* Verified Complaint, *U.S. v. Pokerstars, et. al*, ("*DOJ Civil Complaint"*), 11-CV-2564(LBS) and Superseding Indictment,  *U.S. v. Scheinberg, et. al*, ("*DOJ Criminal Indictment*") 10-CR-336(LAK);  *See also* Compl. ¶ 97.  Arrest warrants were issued for certain founders of these companies for, among other offenses, money

laundering, conspiracy to commit wire fraud, and conspiracy to commit bank fraud.  *See generally DOJ Criminal Indictment* (naming Full Tilt founder Raymond Bitar as a criminal defendant).  The Department of Justice also filed a civil suit against the three companies for money laundering and for *in rem* forfeiture of all assets and proceeds derived from the illegal acts in which these companies allegedly engaged.  DOJ Civil Complaint.

Regulatory changes in 2006 cut off most of the routes by which Full Tilt could accept and process U.S. player funds.  Due in part to the passage of the 2006 Unlawful Internet Gambling Enforcement Act (18 U.S.C.S. § 5361, *et seq.*), the enterprise was unable to process eCheck and credit card transactions from U.S. Players.  *DOJ Civil Complaint* at ¶¶ 26 – 36.  Defendants feared that requiring U.S. customers to deposit funds through legal, but more burdensome methods (for example, cash transfers) would significantly injure Full Tilt's business in its most profitable geographic market.  Thereafter, some defendants joined together to form a RICO enterprise that maintained convenient access to U.S. player deposits through illegal means, involving a pattern of fraud and money laundering where sham front companies would act for Full Tilt to disguise to banks and credit card issuers the nature of Full Tilt's  transactions, which the financial institutions would otherwise have refused.  Compl. ¶ 10.

U.S. customers who played for real-money on the Full Tilt website were required to maintain a Player Account with Full Tilt.  U.S. customers deposited their funds into their personal Player Accounts through a number of methods, including credit and debit card transactions and wire transfers ("eChecks" through ACH).  *DOJ Civil Complaint* at ¶ 60.  However, after 2006, this was possible only because Full Tilt unlawfully concealed the origin and nature of the transactions.  *Id.* at ¶ 2.  Full Tilt made statements asserting that these accounts were safe and secure, and that the processing was safe and secure, while knowing full well that

the processing involved sham companies, violated federal law and placed player money at risk. Compl. ¶¶ 87-88. The deposited funds were held by Full Tilt, in bailment or escrow, in accounts that were accessible to the players at all times through their Full Tilt Player Accounts until April 15, 2011. The funds remained, at all times, the property of the U.S. account holders who deposited them, even though Full Tilt served as a custodian. *Id.* at ¶ 7. Upon establishing their Player Accounts and depositing a minimum sum into their Player Accounts, U.S. customers were free to play for real-money in Full Tilt Poker card rooms with players from all over the world and even with professional poker legends sponsored by Full Tilt. However, because of the pattern of illegal activity Full Tilt engaged in to process transactions, the accountholders' money was imperiled by the possibility of civil, criminal or regulatory sanctions – which is precisely what happened. Since the Government leveled criminal charges and sought forfeiture of some assets, and even though the Government has explicitly permitted Full Tilt to return the account balances, Full Tilt has kept the money, reported to be approximately $150 million. Compl. ¶ 11.

Full Tilt has effectively conceded its obligation to restore access to U.S. Player Accounts, stating: "Please be assured that your funds are safe, and we thank you for your patience while we do everything in our power to have your money returned to you as soon as possible." Compl. ¶ 12. However, under the circumstances present here, those promises could be a dead letter unless this Court takes steps to put the accountholders' money under the control of a U.S.-based escrow account as a constructive trust, where this Court can supervise it.

## **ARGUMENT**

### I. **PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION IMPOSING A CONSTRUCTIVE TRUST AND FREEZING ASSETS PENDING A TRIAL ON THE MERITS**

The Court should issue a preliminary injunction imposing a constructive trust over balances in the accounts of Full Tilt Poker's U.S. accountholders, and directing that Defendants

and all those acting in concert with them place such funds in escrow in the United States.

**A.    The Imposition Of A Constructive Trust Is An Appropriate Remedy**

A District Court has the inherent power to grant injunctive relief freezing assets and imposing a constructive trust to prevent dissipation of assets in order to preserve its power to grant equitable relief. *See Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 559 (9th Cir. 1992) ("the injunction is authorized by the district court's inherent equitable power to issue provisional remedies ancillary to its authority to provide final equitable relief"); *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1115 (9th Cir. 1982) (a court has the power to issue a preliminary injunction to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies); *Quantum Corporate Funding, Ltd. v. Assist You Home Health Care Servs. of Va., L.L.C.*, 144 F. Supp. 2d 241, 250 n.9 (S.D.N.Y. 2001) ("where plaintiffs seek both equitable and legal relief in relation to *specific* funds, a court retains its equitable power to freeze assets") (emphasis in original).  Injunctive relief is especially appropriate "where the evidence strongly indicates that the assets were ill-gotten gains at the expense of an interest of the public protected by law." *Fed. Sav. & Loan Ins. Corp. v. Dixon,* 835 F.2d 554, 562 (5th Cir. 1987).  Here, the Defendants' misconduct in wrongfully holding the accountholders' balances threaten the Plaintiffs' ability to ever recover their money.

**B.    Plaintiffs Have Satisfied The Standard for Issuance Of A Preliminary Injunction**

The standard in the Second Circuit for injunctive relief calls for a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Bridgeport Coalition for Fair Representation v. City of Bridgeport*, 26 F.3d 271, 274 (2d Cir. 1994) (quoting *Jackson*

*Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)).[1]  As set forth below, the standard is easily met here.

### 1.      Plaintiffs Will Be Irreparably Harmed If No Injunction Is Issued

The purpose of the requested relief is to preserve the status quo, so that in the overwhelmingly likely event of a judgment against some or all defendants, any equitable remedies to which plaintiffs may be entitled will not become a nullity as a result of the dissipation of defendants' assets.  In the absence of injunctive relief, the defendants may create more offshore entities and move accounts to parts unknown, possibly to jurisdictions that bar recognition of U.S. judgment.  This is particularly problematic where, as here, there are two criminal defendants overseas beyond the reach of U.S. authorities who may seek to ensure that they have access to wealth to allow them to remain outside the U.S.

Plaintiffs are not required to *prove* that future uncollectability is a certainty in order to establish irreparable harm.  Rather, the mere *possibility* that property will be irretrievably dissipated and lost "is itself sufficient to support a finding of irreparable injury."  *Republic of Panama v. Air Panama Internacional, S.A.,* 745 F. Supp. 669, 674 (S.D. Fla. 1988); *H.N. Singer, Inc.,* 668 F.2d at 1113 ("'there may be circumstances where a district court should temporarily freeze defendants' assets to insure that they will be available to compensate public investors'") (quoting *SEC v. Manor Nursing Ctrs., Inc.*, 458 F.2d 1082, 1105-06 (2d Cir. 1972)); *see also New York Land Co. v. Republic of Philippines*, 634 F. Supp. 279, 288 (S.D.N.Y.), *aff'd sub nom. Republic of Philippines v. Marcos*, 806 F.2d 344 (2d Cir. 1986) (holding that without a constructive trust the subject of the case could pass out of the plaintiff's reach, and the possibility

---

[1] "The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical."  *AIM Int'l Trading, LLC v. Valcucine SpA*, 188 F. Supp. 2d 384, 386 (S.D.N.Y. 2002).

of depriving the plaintiff any hope of protecting its claim to ownership alone was a sufficient finding of irreparable injury).  Thus, in circumstances similar to these, courts routinely hold that preliminary injunctive relief in the form of an asset freeze/constructive trust is proper in order to preserve plaintiffs' entitlement to equitable remedies while the case proceeds to judgment.  *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) (upholding preliminary injunction and asset freeze to preserve plaintiffs' damages remedy); *Marcos*, 862 F.2d at 1364 (same).

Here, as in the cases cited above, the plaintiffs are entitled to injunctive relief because of the possibility property will disappear: both as evidenced by defendants' use of a panoply of offshore entities as bulwarks against the application of U.S. law, and now the sale of the company to overseas purchasers.  The entity defendants are located primarily on islands and principalities with a reputation for hiding assets, and the individuals have made millions from causing Full Tilt to accept funds from U.S. players in open disregard of U.S. statutory bars since 2006.  Therefore, it is reasonable to assume that each would take whatever measures are necessary to preserve their wealth and retain the unearned millions of dollars in ill-gotten gains and compensation from their wrongful conduct.  Instead of allowing the defendants to spirit away the funds at issue, such funds should be protected through a constructive trust during the pendency of this litigation.  *See Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386 (1919) (Cardozo, J.) ("When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.") (*abrogated on other grounds by Israel v. Chabra*, 12 N.Y.3d 158, 167 (2009).

### 2.    <u>The Balance Of The Hardships Tips Strongly In Plaintiffs' Favor</u>

The balance of hardships strongly favors the issuance of the requested relief.  The hardship on the accountholders will be tremendous if defendants are permitted to dissipate their

ill-gotten gains before a trial – the gravamen of which Full Tilt has effectively admitted is meritorious.  Imposing a constructive trust on more than one hundred million dollars in account balances is the only viable means of recovery for plaintiffs' conversion claim.  The strong probability of plaintiffs' success on the merits lessens the weight to be given to any harm to the defendants arising from the issuance of the injunctive relief.

The requested injunction here is narrowly tailored.  It requires that defendants account for the balances in U.S. players' accounts, and place those funds in escrow in a U.S.-based account. *See Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 263 n.1 (E.D.N.Y. 2008) (court issued preliminary injunction requiring defendants to place disputed funds in escrow pending the outcome of litigation).  There is no hardship to the defendants because the account funds are not currently in use.  In any event, the funds indisputably belong to plaintiffs and the proposed class members.  With Full Tilt's online card games idled, a constructive trust over these funds will not halt any going business.  The hardship on plaintiffs – the possibility of being left without remedy for defendants' egregious behavior – will be great and irreversible.  Accordingly, the balance of hardship tips sharply in plaintiffs' favor.

### 3.    Plaintiffs Have a "Strong or Substantial" Likelihood of Success on the Merits

At this stage, plaintiffs "need not demonstrate a clear likelihood of success" since they have "shown a possibility of such injury," "the balance of hardships is in [their] favor" and their "claim[s] present[] serious questions worthy of consideration at trial."  *Applied Digital Data Sys. Inc. v. Milgo Elec. Corp.*, 425 F. Supp. 1145, 1156 (S.D.N.Y. 1977).  *See also* 13 J. Wm. Moore, *Moore's Federal Practice* - Civil §65.36 (2004) ("when the feared injury would be severe, the movant need not demonstrate a likelihood of success on the merits" to warrant the grant of a

TRO).[2]  Moreover, the Supreme Court has stated the following with respect to the purpose and nature of preliminary injunctions:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held.  Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.  A party thus is not required to prove his case in full at a preliminary-injunction hearing.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

However, despite the low evidentiary bar that the plaintiffs must surmount it is clear that they can demonstrate a strong likelihood of success on the merits.  Plaintiffs' conversion claim is quite straightforward in light of Full Tilt's admissions, and the statements of the United States Attorney.  U.S. Attorney Bharara has entered into an agreement specifically permitting Full Tilt to use its internet domain, previously seized, to redistribute funds to accountholders, and Full Tilt has announced its intention to do so (but has not stated a timeline).  Accordingly, plaintiffs have shown a strong likelihood of success on the merits of their conversion claim.[3]

### 4.     Plaintiffs Have Raised Sufficiently Serious Questions Going to the Merits

Even if this Court does not feel that the discussion in the previous section is sufficient to show a likelihood of success on the merits, the relief requested should still be granted.  Since the "balance of hardships tips decidedly toward plaintiff," it will be enough to justify a preliminary

---

[2] "The standard for granting a temporary restraining order and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Procedure are identical." *AIM Int'l.*, 188 F. Supp. 2d at, 386.

[3] Plaintiffs' other causes of actions will likewise be successful on the merits.  For the purpose of this motion, however, establishing the success of one cause of action is sufficient. *Medtronic, Inc. v. Gibbons*, 527 F. Supp. 1085 (D. Minn. 1981), *aff'd*, 684 F.2d 565 (8th Cir. 1982) (Requirement that there be likelihood of success on merits for issuance of preliminary injunction necessitates preliminary evaluation of merits of case, but does not require movant to prove 50 percent or greater chance of success, but, rather, requires that court must evaluate merits of case in light of equities).

injunction "that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953); *see also King v. Civil Serv. Comm'n of City of New York*, 382 F. Supp. 1128 (S.D.N.Y. 1974) (Plaintiff can prevail on a motion for a temporary restraining order if circumstances of the case and the evidence raise a substantial question going to the merits and the balance of hardship tips sharply in plaintiff's favor).   At a minimum, plaintiffs' allegations and defendants' course of conduct raise "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus more deliberative investigation." *Hamilton*, 206 F.2d at 740.  In this case, the core of plaintiffs' allegations are supported by an indictment, based on evidence that a grand jury found compelling, and those facts make out a pattern of fraud, deceit and money laundering.  Further, it is not in dispute that Full Tilt is holding the U.S. accountholders' money; Full Tilt has conceded as much.  The danger is that the funds will disappear beyond the reach of this Court and practically moot any adjudication.   Accordingly, a preliminary injunction should be issued.

## II.    PLAINTIFFS ARE ENTITLED TO AN IMMEDIATE EQUITABLE ACCOUNTING

Plaintiffs also request an accounting.  In case the assets have been moved or commingled, it is vitally important to ensure now that there is a list of balances so that the money can be returned if plaintiffs achieve a judgment at some time in the future.  This is particularly true where, as here, ownership of the accounts appears to be about to change hands.  If this is not done, and the information is kept offshore and subsequently lost or destroyed, it may be difficult or impossible to determine the proper distribution of the accountholders' funds even if the plaintiffs prevail.  That result should not be permitted.

An "accounting" is "an action for equitable relief against a person in a fiduciary relationship to recover profits taken in breach of the relationship." *Black's Law Dictionary* 20 (7th ed. 1999). The purpose of an accounting is to "'[avoid] unjust enrichment. In this sense it reaches monies owed by fiduciary or other wrongdoer, including profits produced by property which in equity and good conscience belonged to the plaintiff.'" *Id.* (quoting Dan B. Dobbs, *Law of Remedies* §4,3(5), at 408 (2d ed. 1993)). The accounting of funds in this case will assist the parties and the Court in preventing the further dissipation of the plaintiffs' assets. *See Fed. Sav. & Loan*, 835 F.2d at 560.

Further, plaintiffs request that the Court order the defendants to provide the name and account number for all bank accounts they hold, every transaction in which any funds or assets were taken from those accounts, and a listing of all transactions involving U.S. accountholders; so that the *res* in question can be, and will remain, identified until final determination is reached.

When a constructive trust is imposed on defendants' ill-gotten gains, defendants must make an accounting to the Court and plaintiffs. *See SEC v. Cavanagh*, 1 F. Supp. 2d 337, 373 (S.D.N.Y. 1998), *aff'd*, 115 F.3d 129 (2d Cir. 1998) (ordering an accounting of assets in addition to continuing an order freezing assets); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 64 F. Supp. 2d 233, 254 n.7 (W.D.N.Y. 1999) ("'The beneficiaries of a constructive trust have the option of tracing the trust property ... into the hands of third parties not involved in the relationships that initially gave rise to the constructive trust ....'") (citation omitted); *Alter v. Bogoricin*, No. 97-0662, 1997 WL 691332, at *15 (S.D.N.Y. Nov. 6, 1997) ("'The right to an accounting is premised upon the existence of confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has

13

an interest.'") (citation omitted); *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 437 (S.D.N.Y. 1998) (same).

## III.   PLAINTIFFS SHOULD BE PERMITTED TO TAKE LIMITED EXPEDITED DISCOVERY TO PROVIDE THE COURT WITH A MORE COMPLETE RECORD

Plaintiffs seek expedited discovery to develop additional evidence regarding the defendants' organization and assets, for the purpose of ensuring that any asset freeze is fully implemented.  Precedent for expedited discovery under similar circumstances is well established in the federal courts.  *See SEC v. Gonzalez de Castilla*, 184 F. Supp. 2d 365, 368 (S.D.N.Y. 2002) (granting TRO freezing assets and ordering expedited discovery); *SEC v. Prater*, 289 F. Supp. 2d 39, 55 (D. Conn. 2003) (granting preliminary injunction freezing assets and ordering expedited discovery)**.**

Plaintiffs seek limited and particularized expedited discovery for the purposes of the Order to Show Cause hearing, to be provided within three days of the hearing of this motion. Such discovery in this case is necessary in order to determine the disposition of the accountholders' funds and verify compliance with such remedy as this Court may order. Without the relevant discovery, plaintiffs and the Court will be unable to determine whether or not the defendants are complying with the constructive trust the Court may impose.  Because liability is very likely and the threat of irreparable injury is significant, there is good cause to grant permission for the limited and particularized discovery plaintiffs seek.  Plaintiffs' proposed expedited discovery is set forth as Exhibit D to the Burt Affidavit.

Plaintiffs seek a small set of documents, all of which have been retained by Full Tilt pursuant to an agreement between Full Tilt and the Department of Justice, attached as Exhibit A to this Brief.  Plaintiffs seek all documents which identify parties to transactions or mediums for transactions involving U.S. player funds, and documents sufficient to identify the

controlling entities of U.S. player funds, the bank accounts in which the U.S. player funds are held, and the balances of U.S. Player Accounts.

## IV.   **NO BOND IS REQUIRED TO BE POSTED BY PLAINTIFFS**

In *Doctor's Assocs. v. Distajo*, 107 F.3d 126 (2d Cir. 1997), the Second Circuit held that the District court had not abused its discretion in enjoining the defendants from prosecuting state cases without requiring the plaintiff to post a bond pursuant to Fed. R. Civ. P. 65(c).  The Second Circuit noted that Rule 65(c) gives a district court "wide discretion to set the amount of a bond, and even to dispense with the bond requirement 'where there has been no proof of likelihood of harm, or where the injunctive order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved.'''"  *Id.* at 136 (quoting *Doctor's Assocs. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996)).

As in *Distajo*, the plaintiffs should not be required to post a bond in order to effectuate the requested preliminary injunction.  First, there is no proof of the likelihood of harm to defendants from the escrowing of plaintiffs' funds, which defendants claim they will return imminently and, in any event, have no right to.  *See, e.g., Fido's Fences Inc. v. Canine Fence Co.*, 309 Fed. Appx. 480, 483 (2d Cir. 2009) (requiring no bond for injunction preventing company from falsely representing itself as authorized dealer of product because no harm was likely); *Blom ASA v. Pictometry Int'l Corp.*, 757 F. Supp. 2d 238, 247 (W.D.N.Y. 2010) (dispensing with bond requirement where injunction "does no more than preserve the preexisting status quo"); *A. Ferlito Farms, Inc. v. Empire Fresh Cuts, LLC*, No. 10-CV-1044, 2010 U.S. Dist. LEXIS 104648, at *1, 9 (N.D.N.Y. Sept. 30, 2010) (dispensing with bond requirement for TRO seeking to enjoin defendant from "from using, consuming or otherwise dissipating" plaintiff's funds).  Moreover, a chief purpose of plaintiffs' requested injunction, as discussed *supra*, is in fact "to aid and preserve the court's jurisdiction over the subject matter involved."

*Stuart*, 85 F.3d at 985 (internal citation omitted).  If the Court does not enjoin the defendants from transferring plaintiffs' funds to the European entity that purchased Full Tilt, such funds will be out of reach of the jurisdiction of this Court, leaving plaintiffs at the mercy of the whims of the new holders of the illicit funds.  *See Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979, 985 (2d Cir. 1997) (requiring no bond where the issue of the injunction concerned the proper forum).

**V.**     **CONCLUSION**

For all the reasons stated above, plaintiffs' Application should be granted.


DATED: July 6, 2011

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
Lawrence P. Kolker
Gregory M. Nespole
Thomas H. Burt
Michael Liskow
Beth Landes

 /s/ Thomas  H. Burt
Thomas H. Burt
270 Madison Avenue
New York, New York 10016
Telephone: 212-545-4600
Facsimile: 212-545-4653