# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
)
STEVEN SEGAL, NICK HAMMER, ROBIN )
HOUGDAHL, and TODD TERRY, on behalf of )
themselves and all other similarly situated )
)
          Plaintiffs, )    Civil Action No.: 11-CV-4521 (LBS)
)
v. )
)
RAYMOND BITAR; NELSON BURTNICK; )
FULL TILT POKER, LTD.; TILTWARE, LLC; )
VANTAGE, LTD; FILCO, LTD.; KOLYMA )
CORP. A.V.V.; POCKET KINGS LTD.; )
POCKET KINGS CONSULTING LTD.; )
RANSTON LTD.; MAIL MEDIA LTD.; )
HOWARD LEDERER; PHILLIP IVEY JR.; )
CHRISTOPHER FERGUSON; JOHNSON )
JUANDA; JENNIFER HARMAN-TRANIELLO; )
PHILLIP GORDON; ERICK LINDGREN; )
ERIK SEIDEL; ANDREW BLOCH; MIKE )
MATUSOW; GUS HANSON; ALLEN )
CUNNINGHAM; PATRICK ANTONIUS and )
JOHN DOES 1-100 )
          Defendants. )
)
_____)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
## <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 9

STATEMENT OF FACTS ................................................................................ 11

A. Plaintiffs ...................................................................................................... 12

B. Defendants ................................................................................................... 12

C. Plaintiffs' Theories of Recovery ................................................................. 13

   1.  Conversion (Count I) .............................................................................. 13

   2.  RICO Violations (Count II and III) ........................................................ 13

STANDARD OF LAW ..................................................................................... 15

Rule 12(b)(2) ...................................................................................................... 7

Rule 12(b)(6) ...................................................................................................... 7

ARGUMENT ..................................................................................................... 16

  I.  Plaintiffs Have Not Pled Facts Sufficient to Establish the Court's Personal Jurisdiction Over Defendants ..................................................................... 16

     A.  This Court Does Not Have Personal Jurisdiction Under 18 U.S.C. § 1965(b) ....... 17

     B.  This Court Does Not Have Personal Jurisdiction Over the Defendants Based on New York's Long-Arm Statute ..................................................... 19

  II.  This Court Should Dismiss Count I of the Complaint Because Plaintiffs Have Failed Adequately to Allege a Conversion Claim ................................ 20

     A.  Plaintiffs Have Failed to Demonstrate Intent on the Part of the Defendants to Exercise Dominion or Control Over the Player Funds ............. 21

     B.  Plaintiffs Have Failed to Identify Which Defendants Have Control Over the Player Funds ...................................................................................... 22

     C.  Plaintiffs Have Failed to Specify or Identify the Monies that May be the Subject of the Conversion ................................................................... 23

  III.  This Court Should Dismiss Counts II and III of the Complaint Because Plaintiffs Have Failed to Allege RICO Violations ................................... 25

     A.  Plaintiffs Have Failed Adequately to Plead the Predicate Acts of Their RICO Claims .......................................................................................... 26

        1.  Paintiffs Fail to Plead Their Predicate Acts Sounding in Fraud with Particularity .................................................................................. 27

        2. Plaintiffs Fail to Plead the Essential Elements of the Predicate Acts ............... 29

     B.  Plaintiffs Fail Adequately to Allege a RICO "Enterprise ...................... 31

        1.  Plaintiffs Insufficiently Allege an Organizational Structure for the purported RICO Enterprise. ....................................................................... 32

2.  Plaintiffs Fail to Plead that Defendants "Operated or Managed" the Purported Enterprise as Required by Section 1962(c) ...................................... 34

3.  Because Plaintiffs Fail to State a Claim Under Section 1962(c), Their Conspiracy Claims Under Section 1962(d) and Count III of the Complaint Must Fail as Well. ........................................................................................... 35

C.  Plaintiffs Lack Standing to Bring RICO Claims Because They Do Not Allege Injuries Suffered "By Reason of" Defendants' Alleged Conduct. ......................... 36

CONCLUSION ....................................................................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*ADP Investor Commc'n Servs., Inc. v. In House Attorney Servs., Inc.,*
 390 F.Supp.2d 212 (E.D.N.Y. 2005) ..................................................................16

*Am. Para Professional Sys., Inc. v. LabOne, Inc.,*
 175 F. Supp. 2d 450 (E.D.N.Y. 2001) ("*APPS*") ................................................8

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 544 (2007) ............................................................................................8

*Biofeedtrac Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.,*
 832 F.Supp. 585 (E.D.N.Y. 1993) ....................................................................26

*Burda Media, Inc. v. Viertel,*
 417 F.3d 292 (2d Cir. 2005) ................................................................................3

*Burger King Corp. v. Rudzewicz,*
 471 U.S. 462 (1985) ..........................................................................................10

*Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks),*
 349 F.Supp.2d 765 (S.D.N.Y. 2005) .................................................................19

*Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.,*
 788 F.2d 535 (9th Cir. 1986)) ...........................................................................11

*DeFalco v. Bernas,*
 244 F.3d 286 (2d Cir. 2001) .........................................................................18, 26

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
 822 F.2d 1242 (2d Cir. 1987) ............................................................................20

*Executive Life Ltd. v. Silverman,*
 890 N.Y.2d 106 (N.Y. App. 2009) ....................................................................12

*FD Prop. Holding, Inc. v. U.S. Traffic Corp.,*
 206 F.Supp.2d 362 (E.D.N.Y. 2002) .............................................................27, 28

*First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.,*
 218 F. Supp. 2d 369 (S.D.N.Y. 2002) ...............................................................10

*First Capital Asset Mgmt. v. Satinwood, Inc.,*
 385 F.3d 159 (2d Cir. 2004) ..............................................................................25

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994)..............................................................................7, 8

*First Nationwide Bank v. Gelt Funding Corp.*,
   820 F.Supp. 89 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994) ......................24

*Fountain v. United States*,
   357 F.3d 250 (2d Cir. 2004), *cert. denied*, 544 U.S. 1017 (2005).........................22

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   640 F.Supp.2d 300 (S.D.N.Y. 2009).......................................................17, 18, 28

*Garber v. Legg Mason, Inc.*,
   537 F.Supp.2d 597 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x. 665 (2d Cir. 2009)......................20

*Gates v. Williamson*,
   No. 01 Civ. 3145 GBD, 2003 WL 21297296 (S.D.N.Y. June 4, 2003) ...................................9

*Hammerschmidt v. United States*,
   265 U.S. 182 (1924)) ...........................................................................................23

*Harris v. Wells*,
   832 F.Supp. 31 (D. Conn. 1993)............................................................................7

*Helicopteros Nacionales de Columbia v. Hall*,
   466 U.S. 408 (1984)............................................................................................10

*Hirsch v. Arthur Andersen & Co.*,
   72 F.3d 1085 (2d Cir. 1995)..................................................................................8

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   352 F.Supp.2d 429 (S.D.N.Y. 2005).....................................................................7, 8

*In re Mastercard Int'l Inc.*,
   132 F.Supp.2d 468 (E.D. La. 2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002) ........................26, 27

*In re Smithkline Beecham*,
   108 F.Supp. 2d 84 (D. Conn. 1999)......................................................................25

*In re Sumitomo Copper Litig.*,
   995 F.Supp. 451 (S.D.N.Y. 1998)........................................................................19

*Jones v. Nat'l Communs. & Surveillance Networks*,
   409 F.Supp.2d 456 (S.D.N.Y. 2006).....................................................................25

*Kernan v. Kurz-Hastings, Inc.*,
   175 F.3d 236 (2d Cir. 1999)..................................................................................7

*Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc.*,
    26 F. Supp. 2d 593 (S.D.N.Y. 1998)...........................................................10

*Lenczycki v. Shearson Lehman Hutton, Inc.*,
    238 A.D.2d 248, 656 N.Y.S.2d 609 (N.Y. App. Div. 1997) ....................................16

*LoPresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997)...........................................................17

*LoPresti v. Terwilliger*,
    126 F.3d 34 (2d Cir. 1997)).........................................................13

*Lorber v. Beebe*,
    407 F.Supp. 279 (S.D.N.Y. 1976)....................................................1

*Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.*,
    156 F.Supp.2 376.................................................................24

*McNally v. United States*,
    483 U.S. 350 (1987)..............................................................23

*Mende v. Milestone Tech., Inc.*,
    269 F.Supp.2d 246 (S.D.N.Y. 2003)................................................7

*Metro Life Ins. Co. v. Robertson Ceco-Corp.*,
    84 F.3d 560 (2d Cir. 1996))........................................................8

*Newbrow v. Freed*,
    409 F.Supp.2d 386 (S.D.N.Y. 2006), *aff'd*, 06-1722-CV, 2007 WL 64291 (2d Cir.
    Feb. 27, 2007) ..........................................................15, 16, 17

*Nordic Bank PLC v. Trend Group, Ltd.*,
    619 F. Supp. 542 (S.D.N.Y. 1985)..................................................10

*Phansalkar v. Andersen Weinroth & Co., L.P.*,
    175 F.Supp.2d 635 (S.D.N.Y. 2001)................................................13

*Pioneer Commercial Funding Corp. v. United Airlines, Inc.*,
    122 B.R. 871 (S.D.N.Y. 1991).....................................................17

*Plount v. American Home Assurances Co.*,
    668 F.Supp. 204 (S.D.N.Y. 1987)..................................................19

*Powers v. British Vita, P.L.C.*,
    57 F.3d 176 (2d Cir. 1995).........................................................28

*PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*,
    138 F.3d 65 (2d Cir. 1999)......................................................9, 11

*Push, Inc. v. Prod. Advisors, Inc.*,
  2010 WL 1837776 (S.D.N.Y. Apr. 15, 2010)..................................................................13

*R.C.M. Executive Gallery Corp. v. Rols Capital Co.*,
  93 CIV. 8571 (JGK), 1997 WL 27059 (S.D.N.Y. Jan. 23, 1997)..........................27

*Republic of Haiti v. Duvalier*,
  211 A.D.2d 379, 626 N.Y.S.2d 472 (N.Y. App. Div. 1995) ...............................16

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993)...........................................................................................26

*Schmidt v. Fleet Bank*,
  16 F.Supp.2d 340 (S.D.N.Y. 1998).................................................................2, 24

*Schwartz v. Capital Liquidators, Inc.*,
  984 F.2d 53 (2d Cir. 1993)). ..........................................................................13

*Schweizer v. Trans Union Corp.*,
  136 F.3d 233 (2d Cir. 1998).............................................................................1

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)) .......................................................................................18

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1993).............................................................................20

*Stadt v. Fox News Newtwork LLC*,
  719 F.Supp.2d 312 (S.D.N.Y. 2010)...........................................................13, 14

*United States Fire Ins. Co. v. United Limousine Serv.*,
  303 F.Supp.2d 432 (S.D.N.Y. 2004)..............................................................26

*United States v. Barrett*,
  178 F.3d 643 (2d Cir. 1999)............................................................................22

*United States v. Rodriguez*,
  140 F.3d 163 (2d Cir. 1998)............................................................................22

*United States v. Stavroulakis*,
  952 F.2d 686 (2d Cir. 1992), *cert. denied*, 504 U.S. 926 (1992)...........................22

*United States v. Turkette*,
  452 U.S. 576 (1981)......................................................................................23, 24

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
  2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004).................................................19

**STATUTES**

18 U.S.C. § 1343 ...................................................................................................................19, 22

18 U.S.C. § 1344 ...........................................................................................................19, 21, 22

18 U.S.C. § 1956(h) .............................................................................................................19, 23

18 U.S.C. §1961(1) ...................................................................................................................18

18 U.S.C. § 1961(4) ..................................................................................................................23

18 U.S.C. § 1961, *et seq.*............................................................................................................1

18 U.S.C. § 1962(c) .....................................................................................................6, 18, 26, 27

18 U.S.C. § 1962(d) .....................................................................................................6, 18, 27, 28

18 U.S.C. § 1964(c) .............................................................................................................28, 29

18 U.S.C. § 1965(b) .........................................................................................................9, 10, 11

C.P.L.R. § 301 .........................................................................................................................11

C.P.L.R. § 302 .........................................................................................................................11

**OTHER AUTHORITIES**

FED. R. CIV. P. 4(i) ....................................................................................................................3

FED. R. CIV. P. 4(h) ...................................................................................................................2

FED. R. CIV. P. 9(b) ........................................................................................................19, 20, 21

FED. R. CIV. P. 12(b)(2) ....................................................................................................... passim

FED. R. CIV. P. 4(f) ....................................................................................................................2

FED. R. CIV. P. 4(f)(1) .............................................................................................................2, 3

FED. R. CIV. P. 4(k)(1)(A) .........................................................................................................11

FED. R. CIV. P. 9(b) ..................................................................................................................20

FED. R. CIV. P.  12(b)(6) ........................................................................................................1, 7

FED. R. CIV. P. 23 .....................................................................................................................1

Defendants, TILTWARE, LLC ("Tiltware"); VANTAGE, LTD. ("Vantage"); FILCO, LTD. ("Filco"); POCKET KINGS LTD.; POCKET KINGS CONSULTING LTD.;[1] HOWARD LEDERER; CHRISTOPHER FERGUSON; JENNIFER HARMAN-TRANIELLO, ERICK LINDGREN; ERICK SEIDEL; ANDREW BLOCH; MIKE MATUSOW; and ALLEN CUNNINGHAM,[2] by and through their undersigned counsel, respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiffs' Complaint in its entirety with prejudice.[3]  Specifically, Defendants move to dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and for failure to state a conversion claim.

## INTRODUCTION

In this case, Plaintiffs have used the legitimate desire of U.S. players to be repaid their account balances from the Full Tilt Poker websites as an excuse to assert over-blown claims for relief to which they are not entitled.   Although the Defendants do not dispute that some U.S. players have account balances that need to be repaid, Defendants do dispute Plaintiffs' claims to the harsh relief they seek in their Complaint.   Not only do Plaintiffs fail to state claims upon

---

[1] Although Plaintiffs named Full Tilt Poker, Ltd. as a Defendant and purported to serve this so-called entity, service cannot be effectuated upon Full Tilt Poker because Full Tilt Poker is a brand name, not a corporate entity.

[2] Undersigned counsel is making a special appearance on behalf of the individual Defendants for purpose of this case only.

[3] Although Plaintiffs have not yet moved for certification of the purported class, " '[t]here is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion' precedes resolution of the issue of class certification."  *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998) (quoting *Lorber v. Beebe*, 407 F.Supp. 279, 291 n.11 (S.D.N.Y. 1976)).

which relief can be granted, but Plaintiffs' actions in instituting this suit could also potentially undermine Full Tilt Poker's ability to return to U.S. players the full amount of monies due to them because Plaintiffs' baseless claims against the Defendants cast a shadow upon the strong brand identity that Full Tilt Poker has worked hard so to achieve.

The key to the success of the Full Tilt Poker brand has always been confidence of the players that anyone who played online poker on the Full Tilt Poker websites would be able to "cash out" at any time and receive the real money remaining in his or her online player account. Prior to Black Friday—April 15, 2011, the day on which the United States government shut down U.S. operations of Full Tilt Poker and other online poker websites—Full Tilt Poker earned this confidence. It is not surprising, therefore, that Plaintiffs make no allegation that there was any material dissatisfaction among Full Tilt Poker players regarding payouts prior to Black Friday. The government's actions on Black Friday did not change Full Tilt Poker's incentive to maintain the confidence of its players. Rather, it merely interrupted the operations of the Full Tilt Poker website in the U.S. and delayed Full Tilt Poker's ability to repay its players.

Plaintiffs concede that Full Tilt Poker has repeatedly stated its intentions to repay U.S. players their account balances. It is for this reason that Plaintiffs' RICO claims—which this Court has described as "the litigation equivalent of a thermonuclear device"[4]—and conversion claims are particularly troubling. Even if Plaintiffs could overcome the personal jurisdiction issues that afflict their case,[5] Plaintiffs still have failed adequately to allege their conversion and RICO claims.

---

[4] *See Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y. 1998).

[5]      In addition to, Plaintiffs cannot overcome the service of process issues that afflict their case. Plaintiffs have not established effective service of process with respect to the foreign corporate Defendants. Federal Rule of Civil Procedure 4(h) governs service upon foreign corporations, such as Vantage, Filco, Pocket Kings Limited and Pocket Kings Consulting Limited. Rule 4(h) permits service "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) . . . except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h). Rule 4(f)(1), in turn, permits service "by any internationally agreed means of service reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ." Fed. R. Civ. P. 4(f)(1).

Plaintiffs' conversion claim in Count I of the Complaint fails because Plaintiffs have failed to: (1) demonstrate intent on the part of the Defendants to exercise dominion or control over the player funds; (2) identify which Defendants have control over the funds in question; and (3) to specify or identify the monies that may be the subject of the conversion.

Counts II and III of Plaintiffs' Complaint also fail to state claims upon which relief can be granted under RICO because Plaintiffs fail to: (1) plead the essential elements of the predicate acts of their RICO claim with particularity; (2) allege a RICO "enterprise" in adequate detail; and (3) specify their particular injuries or allege that those injuries were suffered "by reason of" the Defendants' alleged conduct.

For these reasons, and for the reasons set forth more fully below, this Court should dismiss Plaintiffs' Complaint in its entirety with prejudice.

## STATEMENT OF FACTS

Plaintiffs filed their Complaint on June 30, 2011, on behalf of themselves, individually, and on behalf of a purported nation-wide class of plaintiffs, stating claims under civil RICO and

---

The United States, United Kingdom and Ireland are signatories to the Hague Convention; therefore, service of process on the above-referenced corporate defendants is governed by the Hague Convention.
The Hague Convention provides four alternate methods of service: (1) service through the Central Authority of member states; (2) service through consular channels; (3) service by mail if the receiving state does not object; and (4) service pursuant to the internal laws of the state. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005); Convention done at The Hague November 15, 1965 Arts. 5, 6, 8, 9 & 10, T.I.A.S. No. 6638, 20 U.S.T. 361, 1969 WL 97765 (U.S. Treaty 1969). In this case, Plaintiffs elected to serve the foreign defendants directly through judicial officers, officials or other competent persons in the States of destination.

Nevertheless, Plaintiffs service on Vantage and Filco is insufficient because Plaintiffs have not proffered reliable proof of service. Federal Rule of Civil Procedure 4(i) specifically requires proof of service to be made by "the server's affidavit." FED. R. CIV. P. 4(i)(1). Additionally, service outside the United States, if made under Rule 4(f)(1), requires proof of service "as provided in the applicable treaty or convention." The Hague Convention does not address requirements for proof of service. Therefore, only Rule 4(i)(1) applies. This Court should not recognize service on Vantage and Filco because Plaintiffs have not provided the server's sworn statement attesting to service, as Rule 4(i)(1) requires. Instead, Plaintiffs submitted cover letters signed by U.K. law firm Allen & Overy LLP. Later, the cover letters were signed by "Simonek," an Administrator with Fort Management Services Limited who purports to represent Vantage and Filco. Plaintiffs' cover letters are entitled to little or weight because they do not satisfy Rule 4(i)(1)'s requirement for proof.

conversion theories.  Plaintiffs contend that Defendants engaged in conversion of U.S. player funds being held in their online poker accounts on the Full Tilt Poker websites and in a pattern of racketeering activities, including bank fraud, wire fraud, and money laundering.

## A.    Plaintiffs

The named Plaintiffs in this action are four "real-money" internet poker players in the U.S. who held accounts with Full Tilt Poker on April 15, 2011.[6]  Pl. Compl. at ¶ 1.  Plaintiffs purport to sue on behalf of a putative nation-wide class of similarly-situated players who, on April 15, 2011, held real-money Full Tilt Poker player Accounts.  *Id.* at ¶ 18.  This class of U.S. players has not yet been certified.  According to the Complaint, the Plaintiffs are suing for access to funds held in Full Tilt player accounts, which have been effectively frozen since the federal government shut down the "real-money" portions of the websites on April 15, 2011.  *Id.* at ¶ 1.

## B.    Defendants

The Defendants in this case are individuals and corporations that Plaintiffs allege engaged in various illegal activities in offering online poker to players in the United States.  *See id.* at ¶¶ 4-5.  Plaintiffs group the Defendants into two categories: The first category is "RICO Defendants," which includes corporations purportedly affiliated with offering, running, and processing the Full Tilt Poker websites.  *Id.* at ¶ 35.[7]  Two individuals are also grouped with the "RICO Defendants:" Tiltware CEO Raymond Bitar and Full Tilt Poker head of payment processing, Nelson Burtnick.  *Id.* Plaintiffs allege that all RICO Defendants were in a position to

---

[6] Named Plaintiffs are New York resident Steve Segal, Minnesota residents Nick Hammer and Robin Hougdahl, and New Jersey resident Todd Terry. ¶¶ 19-22.

[7] "RICO Defendants"  include the following corporations:  Full Tilt Poker Ltd., Tiltware LLC, Vantage Ltd., Filco Ltd., Kolyma Corporation A.V.V., Pocket Kings Ltd., Pocket Kings Consulting Ltd., Ranston Ltd., Mail Media Ltd., individuals Raymond Bitar and Nelson Burtnick, and unnamed John Does 1-100. ¶¶ 23-35.

conduct the affairs of the purported Enterprise and that all RICO Defendants aided and abetted the illegal actions and/or conspired to accomplish illegal acts.  *Id.* at ¶ 62, ¶ 130, ¶ 141.

Plaintiffs refer to the second category of Defendants simply as "Defendants."  This umbrella category includes the RICO Defendants, as well as the thirteen individual Defendants, who are not alleged to be RICO Defendants.[8]  *Id.* at ¶ 49.

### C.    Plaintiffs' Theories of Recovery

Plaintiffs allege two theories of recovery: Conversion (Count I) and RICO (Counts II and III).

### 1.    Conversion (Count I)

Plaintiffs allege in Count I of their Complaint that the Defendants are liable for conversion of the monies and assets held in the player accounts since April 15, 2011.  *Id.* at ¶ 116.  Plaintiffs claim that "U.S. players are wrongfully denied access to approximately $150 million (USD) in funds they deposited in their own Player Accounts."  *Id.* at ¶ 11.  Plaintiffs allege that the Defendants have "effectively conceded [their] obligation to restore to U.S Player Accounts," by stating: "Please be assured that your funds are safe, and we thank you for your patience while we do everything in our power to have your money returned to you as soon as possible."  *Id.* at ¶ 12.  At no point in their Complaint do Plaintiffs allege that Defendants have outright refused to return the money to the U.S. players.  Also, at no point in the Complaint do Plaintiffs allege a specific entitlement to any portion of the $150 million owed to U.S. players.

### 2.    RICO Violations (Count II and III)

---

[8] The individual Defendants include: Howard Lederer, Phillip Ivey Jr., Christopher Ferguson, Johnson Juanda, Jennifer Harmon-Traniello, Phillip Gordon, Erick Lindgren, Erick Seidel, Andrew Bloch, Mike Matusow, Gus Hansen, Allen Cunningham, and Patrik Antonius. ¶¶ 36-49.

In Counts II and III of their Complaint, Plaintiffs allege violations of 18 U.S.C. § 1962(c) and § 1962(d).  Plaintiffs allege bank fraud, wire fraud, and mail fraud as the predicate acts for the alleged RICO violations.  Plaintiffs contend that the RICO Defendants engaged in a number of fraudulent schemes to circumvent restrictions imposed on U.S. banks by the Unlawful Internet Gambling Enforcement Act of 2006.  *See id.* at ¶¶ 67-68, ¶¶ 67-92.  Plaintiffs allege, among other things, that the RICO Defendants (1) directed third party processors to apply fake codes to credit card transactions so that the credit card issuer could not identify and then possibly deny gambling transactions, *id.* at ¶ 77; (2) created sham merchant and fake e-commerce websites to create credit card processing accounts that would not be easily associated with online poker operators, *id.* at ¶ 78; and (3) used false codes and sham companies in processing e-checks through the Automated Clearinghouse System, *id.* at ¶¶ 81-86.  Plaintiffs also contend that the RICO Defendants laundered the proceeds of the alleged bank and wire fraud schemes by transferring the funds to offshore banks and concealing the truth about the transactions.  *Id.* at 124.

In addition, Plaintiffs claim that certain alleged misrepresentations on the Full Tilt Poker websites constituted a separate predicate act under RICO.  *See id.* at ¶¶ 134, 135.  Among other things, Plaintiffs claim that the Full Tilt Poker website deceptively represented to account holders that their money would be "safe and secure" upon deposit in a Full Tilt player account. *Id.* at ¶¶ 87-92.

According to Plaintiffs, these alleged predicate acts ultimately resulted in the government's intervention to halt the companies' real-money poker operations in the U.S. as of April 15, 2011.  *Id.* at ¶ 2.  Plaintiffs allege that since that date, their individual player accounts have been frozen by the Defendants and inaccessible to Plaintiffs.  *Id.* at ¶ 1.

By way of this lawsuit, Plaintiffs now seek access to their player accounts and a refund of the sums which were in those accounts immediately before the government's seizure of the online poker accounts.

## STANDARD OF LAW

Defendants move to dismiss Plaintiffs' Complaint (1) for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and (2) for failure to state claims under RICO and for conversion upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). "Conclusory allegations are not enough to establish personal jurisdiction." *Mende v. Milestone Tech., Inc.*, 269 F.Supp.2d 246, 251 (S.D.N.Y. 2003) (quoting *Harris v. Wells*, 832 F.Supp. 31, 34 (D. Conn. 1993)).

### Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, while a court must draw "all reasonable inferences" in favor of the plaintiff, and well-pleaded material allegations of the complaint are taken as true, "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 765, 771-72 (2d Cir. 1994) (quotations omitted); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F.Supp.2d 429, 443 (S.D.N.Y. 2005)("Generally, 'conclusory allegations or legal conclusions masquerading as factual contentions will not suffice to prevent a motion to dismiss.'"). Moreover, courts "do not accept conclusory allegations on the legal effect of the events plaintiff has set out if these allegations do not reasonably follow

15

from his description of what happened . . . ."  *First Nationwide Bank*, 27 F.3d at 765, 771-72

(internal quotations omitted).  "Allegations that are so conclusory that they fail to give notice of

the basic events and circumstances of which the plaintiff complains, are insufficient as a matter

of law."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F.Supp.2d at 443; *see also Hirsch v.*

*Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *see also Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right

to relief about the speculative level . . . .").

## ARGUMENT

### I.      Plaintiffs Have Not Pled Facts Sufficient to Establish the Court's Personal Jurisdiction Over Defendants

As a threshold matter, Plaintiffs' complaint should be dismissed as to corporate

Defendants Tiltware, Vantage, Filco, Pocket Kings Limited, and Pocket Kings Consulting

Limited and individual Defendants Howard Lederer, Chris Ferguson, Erik Seidel, Mike

Matusow, and Andy Bloch[9] because Plaintiffs have not established that this Court has personal

jurisdiction over them.  Plaintiffs bear the burden of establishing the Court's jurisdiction.  *See*

*Am. Para Professional Sys., Inc. v. LabOne, Inc.*, 175 F. Supp. 2d 450, 454 (E.D.N.Y. 2001)

("*APPS*") (citing *Metro Life Ins. Co. v. Robertson Ceco-Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)).

---

[9] Undersigned counsel submitted affidavits on behalf of Jennifer Harman-Traniello and Allen Cunningham to Plaintiffs' counsel, seeking voluntary dismissal of these Defendants based on Defendants' complete lack of contacts with the State of New York.  Plaintiffs' counsel refused to stipulate to a voluntary dismissal of these Defendants. Since submitting affidavits on behalf of these Defendants, Defendant Erick Lindgren prepared a similar affidavit regarding his lack of contacts with the State of New York.  Accordingly, these Defendants simultaneously have filed a separate motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.  Defendants Cunningham, Harman-Traniello, and Lindgren alternatively seek the relief requested in this Motion.

More specifically, Plaintiffs' allegations fail to establish the Court's personal jurisdiction based on either 18 U.S.C. § 1965(b) or New York's long-arm statute.

### A.    This Court Does Not Have Personal Jurisdiction Under 18 U.S.C. § 1965(b)

This Court does not have personal jurisdiction over the above-referenced corporate and individual defendants under 18 U.S.C. § 1965(b), as alleged.  *See* Compl. ¶ 15.  Section 1965 provides in relevant part:

> In any action under section 1964 of this chapter [*i.e.*, the civil RICO statute] in any district of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purposes may be served in any judicial district of the United States thereof.

18 U.S.C. § 1965(b).  Plaintiffs rely on section 1965(b) to establish personal jurisdiction over all of the defendants in this case.  Pl. Compl. at ¶ 15.  But section 1965 does not provide for nationwide personal jurisdiction over every defendant in every civil RICO case, no matter where the defendant.  Subsection b supports jurisdiction as to "other parties" only if the Court has jurisdiction over one RICO Defendant under section 1965(a).  *See Gates v. Williamson*, No. 01 Civ. 3145 GBD, 2003 WL 21297296, at *3 (S.D.N.Y. June 4, 2003).  Plaintiffs have not established personal jurisdiction over any of the RICO defendants under section 1965(a); thus, there can be no jurisdiction over any RICO Defendant under section 1965(b).  *See PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1999).

Additionally, Plaintiffs have not pled facts to support that Tiltware or any other RICO Defendant resides, is found, has an agent, or transacts its affairs in the Southern District of New York as required under section 1965(a).  *Cf. PT United Can Co. Ltd.*, 138 F.3d at 71.  Indeed, Plaintiffs have not pled facts to show that Tiltware or any of the foreign corporate defendants have systematic and continuous contacts with New York sufficient for general jurisdiction.  *See*

17

*Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 415 (1984).  Nor have they pled

facts showing that Tiltware or any of the other RICO Defendants purposefully availed

themselves of the privilege of doing business in New York, as required for specific jurisdiction.

*See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Finally, this Court does not have personal jurisdiction over Vantage, Filco, Pocket Kings

Limited, and Pocket Kings Consulting Limited under 18 U.S.C. § 1965(b) because the RICO

statute does not provide for international service of process.  *See First Capital Asset Mgmt., Inc.*

*v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 392 (S.D.N.Y. 2002).  Because effective service is a

prerequisite to the exercise of personal jurisdiction, a foreign party against whom a RICO claim

is asserted must be served with process in this country.  *See Laborers Local 17 Health & Ben.*

*Fund v. Philip Morris, Inc.*, 26 F. Supp. 2d 593, 601 (S.D.N.Y. 1998); *Nordic Bank PLC v.*

*Trend Group, Ltd.*, 619 F. Supp. 542, 564 (S.D.N.Y. 1985) (holding that court could not exercise

personal jurisdiction over foreign parties because the language of § 1965(b) does not authorize

service in a foreign country).  Vantage, Filco, Pocket Kings Limited, and Pocket Kings

Consulting Limited were served in their respective countries overseas; thus, the Court has no

personal jurisdiction over them based on section 1965(b).

This Court does not have personal jurisdiction over individual Defendants Howard

Lederer, Chris Ferguson, Erik Seidel, Mike Matusow, and Andy Bloch based on the RICO

statute because Plaintiffs have not alleged any RICO claims against them.  In fact, Plaintiffs

concede that they do not yet have a factual basis for such a claim.  Pl. Compl. at ¶ 49 ("Plaintiffs

expect that after appropriate discovery is conducted, Lederer . . . Ferguson, Seidel, Bloch,

Matusow . . . may also be named as RICO Defendants."  The Court cannot exercise jurisdiction

over the named individuals solely based on Plaintiffs' expectation.  Plaintiffs must allege

concrete facts to demonstrating that the individuals participated in the alleged RICO conspiracy. *See PT United Can Co., Ltd.*, 138 F.3d at 72 (citing *Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)).  Because Plaintiffs have not made such allegations, the Court cannot exercise personal jurisdiction over the above-referenced individuals based on 18 U.S.C. § 1965(b).

### B.      This Court Does Not Have Personal Jurisdiction Over the Defendants Based on New York's Long-Arm Statute.

Plaintiffs' claims against the corporate and individual Defendants are subject to dismissal under Rule 12(b)(2) because the Court does not have personal jurisdiction over them on any other grounds, including based on Rule 4(k)(1)(A) and New York's long-arm statute.  Plaintiffs allege this Court's personal jurisdiction based on Federal Rule 4(k)(1)(A).  Pl. Compl. at ¶ 15. Rule 4(k)(1)(A) provides that "[s]ervice of summons . . . is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  Under New York law, this Court may exercise personal jurisdiction based on N.Y. C.P.L.R. § 301 (general jurisdiction) or N.Y. C.P.L.R. § 302 (specific jurisdiction).  Because Plaintiffs have not asked this court to exercise general jurisdiction under § 301, *see* Pl.'s Reply to Tiltware, LLC' Response (Dkt. 16) at 3-4 & n.8, the analysis herein is limited to specific jurisdiction under § 302.

Plaintiffs' claims against Tiltware, Vantage, Filco, Pocket Kings Limited, and Pocket Kings Consulting Limited must be dismissed for lack of personal jurisdiction because the complaint does not allege "minimum contacts" as required for jurisdiction under § 302.  With respect to Tiltware, Plaintiffs allege only that it is the exclusive software developer and licensor for the Full Tilt websites, and Full Tilt's "marketing wing."  Pl. Compl. at ¶¶ 26, 60(b).

19

Plaintiffs also allege that Tiltware is the parent company of several other RICO Defendants.  *Id.* at ¶ 26.  Similarly, Plaintiffs allege that Pocket Kings Limited provided " '[t]echnology and [m]arketing consulting services to the online poker industry and one of the fastest growing poker sites, Full Tilt Poker,' "  *id.* at ¶ 30, and that Pocket Kings Consulting Limited is a "related company to Pocket Kings, Filco, and My West Nook Limited," *id.* at ¶ 31.  But these allegations do not show that the corporate Defendants purposefully availed themselves of the privilege of doing business in New York or that they expressly targeted New York residents.  *See Executive Life Ltd. v. Silverman*, 890 N.Y.2d 106 (N.Y. App. 2009).  As a result, Plaintiffs' claims against them must be dismissed.

Plaintiffs' claims against Howard Lederer, Chris Ferguson, Erik Seidel, Mike Matusow, and Andy Bloch also must be dismissed under Rule 12(b)(2) because Plaintiffs do not allege any specific contacts that these individuals have with the State of New York.  Plaintiffs allege only that the referenced individuals are officers and directors of "Full Tilt" companies and that they participated in poker-related events all over the world, and that he wore clothing and accessories advertising the Full Tilt brand.  Pl. Compl. at ¶ 36 (Lederer); ¶ 38 (Ferguson); ¶ 43 (Seidel); ¶ 44 (Bloch); and ¶ 45 (Matusow).  These generic allegations are insufficient to support a finding of purposeful availment with respect to the forum state, as required for specific jurisdiction.  *See Executive Life Ltd.*, 890 N.Y.2d at 106.  As a result, the claims against them must be dismissed for lack of personal jurisdiction.

## II.   This Court Should Dismiss Count I of the Complaint Because Plaintiffs Have Failed Adequately to Allege a Conversion Claim

This Court should dismiss Count 1 of the Complaint because Plaintiffs have failed adequately to allege a conversion claim for several reasons.  First, Plaintiffs have failed to demonstrate intent on the part of the Defendants to exercise dominion or control over the player

funds.  Second, Plaintiffs have failed to specify which Defendants have control over the player funds.  Third, Plaintiffs have failed to specify or identify the monies that may be the subject of the conversion.

### A.   Plaintiffs Have Failed to Demonstrate Intent on the Part of the Defendants to Exercise Dominion or Control Over the Player Funds

Count I of Plaintiffs' Complaint fails as a matter of law because Plaintiffs have not established a cause of action for conversion under New York law, which requires a showing of intent to exercise dominion or control over the property in question. To establish a cause of action for conversion under New York law, a plaintiff must show (1) "legal ownership or an immediate superior right of possession to a specific identifiable thing" and (2) that the defendant "exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Phansalkar v. Andersen Weinroth & Co., L.P.*, 175 F.Supp.2d 635, 639 (S.D.N.Y. 2001) (citation omitted).  "[I]t is similarly well-settled that a defendant can be held liable for conversion so long as he intends to exercise dominion or control over another person's property, even if he does so in good faith or under the mistaken belief that the property is his own." *Push, Inc. v. Prod. Advisors, Inc.*, 2010 WL 1837776, at *4 (S.D.N.Y. Apr. 15, 2010) (quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 41-42 (2d Cir. 1997)).  This Court has clearly stated that when the original possession is lawful, "conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Stadt v. Fox News Newtwork LLC*, 719 F.Supp.2d 312, 318 (S.D.N.Y. 2010)(citing *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53 (2d Cir. 1993)).

Here, there is no dispute that U.S. players have account balances that need to be repaid. Plaintiffs, however, fail to allege that the Defendants intend to exercise dominion or control over the player funds to the exclusion of Plaintiffs' rights.  Indeed, the allegations in Plaintiffs' Complaint belie such a claim.  Plaintiffs' Complaint repeatedly demonstrates intent on the part of

the Defendants to repay the player funds, not to withhold them from Plaintiffs.  Plaintiffs quote a message found on the Full Tilt Poker websites, which reads: "Please be assured that your funds are safe, and we thank you for your patience while we do everything in our power to have your money returned to you as soon as possible."  Pl. Compl. at ¶12.  Even when accusing Defendants of wrongdoing, Plaintiffs maintain that the Defendants "repetitively communicat[ed] [their] intentions to fulfill [their] obligation to refund, return, or otherwise reimburse U.S. player funds." *Id.* at ¶ 107.

Further, Plaintiffs do not allege that the Defendants' original possession of the monies held in the account balances was unlawful.  Given that Plaintiffs do not assert such a claim, Plaintiffs must demonstrate that the Defendants "refus[ed] to return the property after demand …." *Stadt*, 719 F.Supp.2d at 318.  Although Plaintiffs allege that the Defendants "intentionally refus[ed] to honor their cash out requests" after April 15, 2011, *see* Pl. Compl. at ¶118, Defendants' repeated assurances that the money would be returned, as indicated on the Full Tilt Poker website, undermine any claim that the Defendants have outright refused to return the monies in the player accounts.  That Plaintiffs have yet to be repaid according to their own timetable is not an indication of the Defendants' intent to exercise unauthorized dominion over the players' funds or refusal to repay the funds in question.  As Plaintiffs have failed to allege the requisite intent to sustain a conversion claim, Count I of Plaintiffs' Complaint should be dismissed with prejudice.

**B.     Plaintiffs Have Failed to Identify Which Defendants Have Control Over the Player Funds**

Even if Plaintiffs have alleged the requisite intent to sustain a conversion claim, Plaintiffs' claim still fails because Plaintiffs have failed to identify which Defendants, if any, have control over the player funds.  Plaintiffs assert Count I of the Complaint against all of the

Defendants, but they fail to allege facts sufficient to support their claim that each and every one of these Defendants has the ability to exercise dominion or control over the funds in question.

With respect to the individual Defendants, Plaintiffs allege that each of the individuals is "a member of the Enterprise" and "a shareholder and director of Full Tilt and/or one or more Full Tilt Companies."  *See* Pl. Compl. at ¶ 36 (Lederer); ¶ 38 (Ferguson); ¶ 43 (Seidel);  ¶ 44 (Bloch); ¶ 45 (Matusow).  Plaintiffs further allege that these individual Defendants "own and, in part, direct the Full Tilt Enterprise."  *See id. at* ¶ 60.  With respect to the corporate Defendants, Plaintiffs merely list a string of entities without pleading any facts sufficient to explain the hierarchy or organization of these companies.  *See id.* ¶¶ 25-34.  Plaintiffs fail to attach to their Complaint any publicly-available corporate documents or filings that would show the controlling entities and individuals among these Defendants.  Without any facts to support which of these Defendants has a controlling interest over the funds in question, this Court is left to speculate as to how a Defendant such as Tiltware—a software provider—could possibly have control over the player funds such that it would be able to comply with any order of this Court.  Furthermore, simply alleging that an individual is a member or shareholder of a company is not enough to show that the individual has authority to exercise dominion or control over the funds in question. Plaintiffs' conclusory allegations of ownership are insufficient to establish that each and every one of these Defendants has the ability to control U.S. player funds.  Accordingly, this Court should dismiss Plaintiffs' conversion claim as to all of the Defendants.

### C.   Plaintiffs Have Failed to Specify or Identify the Monies that May be the Subject of the Conversion

Plaintiffs' conversion claim also fails as a matter of law because Plaintiffs have not specified or identified the monies that may be the subject of the conversion.  Under New York law, money may be the subject of a conversion claim if it is "specifically identifiable."  *Newbrow v. Freed*, 409 F.Supp.2d 386, 395 (S.D.N.Y. 2006), *aff'd*, 06-1722-CV, 2007 WL 64291 (2d Cir.

Feb. 27, 2007).  "[T]he conversion claim must be for recovery of a particular and 'definite sum

of money, although the specific bills are not identified …'."  *Id.* (quoting *ADP Investor*

*Commc'n  Servs., Inc. v. In House Attorney Servs., Inc.,* 390 F.Supp.2d 212, 224 (E.D.N.Y.

2005).  Courts have discussed what is meant by an "identifiable fund."  New York courts have

held that "funds of a specific, named bank account are sufficiently identifiable" to support a

conversion claim.  *Id.* (citing *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384, 626 N.Y.S.2d

472 (N.Y. App. Div. 1995)); *see also Lenczycki v. Shearson Lehman Hutton, Inc.*, 238 A.D.2d

248, 656 N.Y.S.2d 609 (N.Y. App. Div. 1997) (holding that where the plaintiff names a

"specific, named bank account," the funds were sufficiently identifiable).

  Here, Plaintiffs fail to specify a "definite sum of money" they purport to be the subject of

their conversion claim.  Nowhere in their Complaint do Plaintiffs, individually, allege an

entitlement to a specific amount of money.  Rather, Plaintiffs merely claim that "U.S. players are

wrongfully denied access to approximately $150 million (USD) in funds they deposited in their

own Player Accounts."  Pl. Compl. at ¶11.  Plaintiffs have failed to identify any sum of that $150

million to which they are purportedly entitled, any personal bank accounts from which these

monies were purportedly debited, or any corporate bank accounts in which these sums are

purportedly held.[10]

  At the very minimum, Plaintiffs should have identified the names their individual player

accounts, to which they claim they have been denied access, as players tend to use unique screen

---

[10] Plaintiffs attach to their Complaint the civil forfeiture complaint pending in the Southern District of New York
against Defendants Tiltware, Vantage, and Filco, among others.  Although the civil forfeiture complaint identifies
certain bank accounts where online poker funds may have been held or transferred to, Plaintiffs fail to identify
which of these accounts purportedly hold the player funds they are now seeking to recover.

names or avatars when playing online poker.[11]  Even outside of the banking context, courts have

found the need for plaintiffs to specify accounts giving rise to their conversion claims.  *See*

*Newbrow v. Freed*, 409 F.Supp.2d at 395 (citing *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir.

1997) (holding that union dues held in company's general account were specific and identifiable

even though they were not segregated); *Pioneer Commercial Funding Corp. v. United Airlines,*

*Inc.*, 122 B.R. 871, 885 (S.D.N.Y. 1991) (holding that accounts receivable were sufficiently

specific and identifiable).  Plaintiffs' player accounts on the Full Tilt Poker websites are not an

actual account in which money is held, but rather, an accounting of the monies to which the

players are entitled as a result of having played poker on the sites.  Although Plaintiffs are

required to identify the entity that controls the player funds and the bank accounts in which those

funds are held, having failed to do so here, Plaintiffs should have, at the very least, specified the

names on their individual player accounts.  Given Plaintiffs' complete failure to specify a

definite sum of money and to identify relevant bank account and player account information, this

Court should dismiss Plaintiffs' conversion claim.

### III.   This Court Should Dismiss Counts II and III of the Complaint Because Plaintiffs Have Failed to Allege RICO Violations

This Court should also dismiss Counts II and III of the Complaint because Plaintiffs fail

adequately to allege RICO violations.  To establish a RICO violation, Plaintiffs must allege "(1)

a violation of the RICO statute, [section] 1962; (2) an injury to business or property; and (3) that

the injury was caused by the violation of [s]ection 1962."  *Fuji Photo Film U.S.A., Inc. v.*

*McNulty*, 640 F.Supp.2d 300, 308-09 (S.D.N.Y. 2009).  This Court has cautioned that civil RICO

---

[11] Plaintiffs claim that their "property has been specifically identifiable because each Plaintiff's property is recorded and/or kept in that Plaintiff's individual Player Account."  Pl. Compl. at ¶ 116.  If this is true, Plaintiffs should have, at the very minimum, provided this Court with names of those player accounts.

should not be used to transform a "garden variety fraud or breach of contract case[ ] … into a vehicle for treble damages." *Id.*

Here, Plaintiffs claim violation of 18 U.S.C. § 1962(c), which requires Plaintiffs to prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Plaintiffs also claim violation of 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To state a claim under section 1962(d), Plaintiffs must plead as to each alleged co-conspirator: "(1) an agreement to join the conspiracy; (2) the acts of each co-conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly participated in the same." *Fuji Photo Film U.S.A.*, 640 F.Supp.2d at 312.

Here, Plaintiffs fail state to a claim upon which relief can be granted under either 18 U.S.C. § 1962(c) or (d).

## A.    Plaintiffs Have Failed Adequately to Plead the Predicate Acts of Their RICO Claims

This Court should dismiss Counts II and III of Plaintiffs' Complaint because Plaintiffs fail adequately to plead the predicate acts of their RICO claims. Plaintiffs have failed to plead their predicate acts sounding in fraud with particularity and have failed to specify an intended target of the purported scheme to defraud. Plaintiffs also fail to plead the essential elements of the predicate acts—namely, bank fraud, wire fraud, and money laundering conspiracy.[12]

---

[12] Plaintiffs also claim that certain alleged misrepresentations on the Full Tilt Poker website constitute a separate predicate act under RICO. *See id.* at ¶¶ 134, 135. Among other things, Plaintiffs claim that the Full Tilt Poker website deceptively represented to account holders that their money would be "safe and secure" upon deposit in a Full Tilt player account. *Id.* at ¶¶ 87-92. Fraudulent misrepresentations, however, is not one of the predicate acts listed under 18 U.S.C. §1961(1) to demonstrate "racketeering activity" under RICO. To the extent Plaintiffs use these alleged misrepresentations as a basis to support their RICO claim, their claim must fail as a matter of law.

1.     **Plaintiffs Fail to Plead Their Predicate Acts Sounding in Fraud with Particularity**

Plaintiffs' RICO claims are premised upon predicate acts stemming from alleged violations of the bank fraud (18 U.S.C. § 1344), wire fraud (18 U.S.C. § 1343), and money laundering conspiracy (18 U.S.C. § 1956(h)), violations.  *See generally* Pl. Compl. at ¶¶ 67-96, ¶ 102.  Plaintiffs, however, fail to plead these predicate acts sounding in fraud with particularity.

Federal Rule of Civil Procedure 9(b) requires that, whenever a complaint contains allegations of fraud, the circumstances constituting fraud shall be stated with particularity.  *See* FED. R. CIV. P. 9(b); *see also In re Sumitomo Copper Litig.*, 995 F.Supp. 451, 455-56 (S.D.N.Y. 1998).  (finding that, in pleading a violation of the mail or wire fraud statutes, Rule 9(b) must be satisfied).  Rule 9(b) has "great urgency" in RICO actions.  *Id*. at 455.  The rationale underlying a strict application of the pleading requirements in RICO actions is that merely initiating a RICO action against a defendant can "unfairly stigmatize him as a 'racketeer.'"  *Plount v. American Home Assurances Co.*, 668 F.Supp. 204, 205 (S.D.N.Y. 1987).  Also, "the civil RICO has resulted in a flood of what are and should be state court cases that are being reframed and brought in federal court as RICO actions because of the carrot of treble recovery and the availability of a federal forum."  *Id.; see also W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) (suggesting that "the civil provisions of [RICO] are the most misused statutes in the federal corpus of law.").  In light of the many abuses of civil RICO, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Burnett v. Al Baraka Inv. & Dev. Corp. (In re Terrorist Attacks)*, 349 F.Supp.2d 765, 827 (S.D.N.Y. 2005).

To satisfy the requirements of Rule 9(b), Plaintiffs must provide "a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications …."  *In re Sumitomo Copper Litig.*, 995 F.Supp. at 456. "[A] complaint making such allegations

must '(1) specify the statements that the plaintiff contend were fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent.'" *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1993).  In other words, a plaintiff must "set forth the who, what, when, where and how of the alleged fraud." *Garber v. Legg Mason, Inc.*, 537 F.Supp.2d 597, 614 (S.D.N.Y. 2008), *aff'd*, 347 F. App'x. 665 (2d Cir. 2009).

Here, Plaintiffs' conclusory statements of a scheme to defraud in the Complaint do not pass muster under Rule 9(b)'s strict pleading requirements.  In alleging bank and wire fraud, Plaintiffs contend that the RICO Defendants engaged in a number of fraudulent schemes to circumvent restrictions imposed on U.S. banks by UIGEA regarding the processing of internet gambling transactions.  *See* Pl. Compl. at ¶¶ 67-68, ¶¶ 67-92.  Although Plaintiffs describe the alleged schemes to defraud banks and other financial institutions, *see generally id.* at ¶¶ 73-86, they fail to allege in any detail: (1) which individuals, or even which corporate Defendants, directed or authorized this alleged scheme to defraud;[13]  (2) which individuals actually made the alleged fraudulent statements that are the subject of the purported scheme to defraud the banks and financial institutions; (3) the dates and locations of the acts specific to the alleged violations; (4) which banks and financial institutions were the purported target of the alleged fraudulent statements and acts; to which specific banks and financial institutions these alleged fraudulent statements were purportedly directed; and (5) how the banks and financial institutions purportedly relied on the alleged fraudulent statements.

The Second Circuit requires Plaintiffs to connect the allegations of fraud to **each individual** defendant.  *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247

---

[13] As previously established, Plaintiffs only identify the corporate Defendants as "RICO Defendants."  *See* Pl. Compl. at ¶ 49.  Given that Plaintiffs claim that the corporate entities committed civil RICO, it is all the more imperative for Plaintiffs to identify specific individuals at these entities who purportedly directed or authorized the fraudulent schemes.  Plaintiffs' Complaint, however, lacks any such allegation.

(2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). Plaintiffs, however, simply clump all of the RICO Defendants into one category and baldly assert: "RICO Defendants, all members of the Full Tilt Enterprise, conspired to commit, and did commit, wire fraud, bank fraud, money laundering and other federal and state offenses for the benefit and under the name and interests of the Full Tilt undertaking."  Pl. Compl. at ¶ 62; *see also id.* at ¶ 140.  Given Plaintiffs' failure to attribute the alleged fraudulent statements to any one particular Defendant and their failure to provide the requisite details of the purported scheme to defraud the banks, Plaintiffs have not satisfied the requirements of Rule 9(b). [14]  Accordingly, Plaintiffs' civil RICO claims contained in Counts II and III of the Complaint should be dismissed.

### 2.   Plaintiffs Fail to Plead the Essential Elements of the Predicate Acts

Plaintiffs also cannot sustain their civil RICO claims because they fail to plead the essential elements of bank fraud, wire fraud, and money laundering conspiracy—i.e., the predicate acts.

### a.   Plaintiffs Fail to Plead the Essential Elements of Bank and Wire Fraud                                            .

Plaintiffs fail to plead the essential elements of bank and wire fraud.  In the Second Circuit, the well-established elements of the crime of bank fraud, 18 U.S.C. § 1344, are that the defendant: "(1) engaged in a course of conduct designed to deceive a federally chartered bank or insured financial institution into releasing property; and (2) possessed an intent to victimize the

---

[14] Although the pending criminal indictment and civil forfeiture case against the online poker companies attached as exhibits to Plaintiffs' Complaint describe the alleged scheme to defraud the banks and financial institutions, these pleadings do not cure the infirmities of Plaintiffs' Complaint because they also fail to specify in detail the who, what, when, where, and how of the alleged fraud.  Like Plaintiffs' Complaint, these pleadings fail to attribute the fraudulent acts to any one particular defendant, instead naming various defendants, all of whom are considered to have furthered the purported scheme to defraud.

institution by exposing it to actual or potential loss." *United States v. Barrett*, 178 F.3d 643, 647-48 (2d Cir. 1999) (citing *United States v. Rodriguez*, 140 F.3d 163, 167 (2d Cir. 1998)).  A key limitation on prosecutions for bank fraud under section 1344 in the Second Circuit is the requirement that the defendants intended to place the bank, or banks, in question at risk of loss as a result of their wrongful conduct.  *See United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992), *cert. denied*, 504 U.S. 926 (1992).

Despite Plaintiffs' description of the alleged frauds perpetrated by the defendants on the banks, the Complaint is wholly devoid of any allegation that the Defendants obtained, or attempted to obtain, from the banks any funds that the Defendants did not rightfully possess. Furthermore, Plaintiffs have not alleged that the Defendants' purported conduct caused a loss or a risk of loss to the banks.  Indeed, to the extent Plaintiffs' Complaint contains any allegations regarding the financial effect on the banks of the Defendants' alleged conduct, it suggests that the Defendants conduct actually substantially enriched the banks.  As Plaintiffs fail to allege any actual or potential loss suffered by the banks, their RICO claims should be dismissed for failure to state a claim of bank fraud.

For the same reasons, Plaintiffs fail to allege the necessary intent on the part of the Defendants to cause harm required for conviction of wire fraud, 18 U.S.C. § 1343.  The "essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004), *cert. denied*, 544 U.S. 1017 (2005) (quotation marks, citation, and brackets omitted).  In the context of wire fraud, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or

30

overreaching.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)).  Here, there is no allegation in Plaintiffs' Complaint that the Defendants intended to deprive another (presumably the banks) of property rights or that Defendants did, in fact, deprive the banks of funds belonging to the banks through use of wire communications. Accordingly, Plaintiffs' RICO claims should be dismissed for failure to state a claim of wire fraud.

### b.   *Plaintiffs Fail to Allege a Specified Unlawful Activity Necessary to Sustain the Money Laundering Conspiracy Claim.*

Plaintiffs also fail to plead the essential elements of a money laundering conspiracy claim.  Under Section 1956(h), Plaintiffs must allege one of the listed "specified unlawful activities" in the statute to support their money laundering conspiracy claim.  *See generally* 18 U.S.C. § 1956(h).  Because Plaintiffs fail to state claims for bank fraud and wire fraud, there can be no allegation of a specified unlawful activity necessary to sustain their money laundering conspiracy claim.  As such, Plaintiffs' RICO claims should also be dismissed for failure to state a claim of money laundering conspiracy.

### B.   Plaintiffs Fail Adequately to Allege a RICO "Enterprise

Alternative, this Court should dismiss Counts II and III of the Complaint because Plaintiffs fail adequately to allege a RICO "enterprise."  To state a RICO claim, Plaintiffs must plead the existence of an "enterprise."  An "enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct."  *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see* 18 U.S.C. § 1961(4) (defining "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity").  An enterprise must be an "ongoing organization" held together

by "evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583.

### 1.    Plaintiffs Insufficiently Allege an Organizational Structure for the purported RICO Enterprise.

Plaintiffs' enterprise allegations fail because they do not sufficiently allege an organizational structure for the purported enterprise.  Plaintiffs allege that, "at all or some relevant time(s) between 2006 and March of 2011, Defendants joined together to form an Enterprise—an association-in-fact which operated under the name of, acted through, and/or held itself out as "Full Tilt."  Pl. Compl. at ¶ 5.  However, to adequately allege the existence of a RICO enterprise functioning as a continuing unit, Plaintiffs must plead facts sufficient to show the "hierarchy, organization, and activities of the association."  *Manhattan Telecomms. Corp. v. DialAmerica Mktg., Inc.*, 156 F.Supp.2 376, 381-82 (S.D.N.Y. 2001).  "Consistent with these standards, a RICO enterprise must exhibit structural continuity over its alleged lifespan."  *Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 349 (S.D.N.Y. 1998); *see also First Nationwide Bank v. Gelt Funding Corp.*, 820 F.Supp. 89, 98 (S.D.N.Y. 1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994), (finding allegations of enterprise insufficient because the plaintiff had not pled any facts regarding the continuity, structure, or personnel of the enterprise). Continuity of structure will be found to exist where "there is an organizational pattern or system of authority that provides a mechanism for directing the group's affairs on a continuing, rather than an ad hoc, basis." *Manhattan Telecomms. Corp.*, 156 F.Supp.2d at 381-82.

Here, Plaintiffs' enterprise allegations are wholly insufficient because Plaintiffs fail to plead facts sufficient to show the "hierarchy, organization, and activities of the association." Plaintiffs merely string together a list of entities, whom they claim to be members of the "Full Tilt Enterprise" (*see* Pl. Compl. at ¶ 61) without providing any explanation as to the structure of

these entities within the purported network. *See* Pl. Compl. at ¶60 (a)-(j).  Indeed, Plaintiffs

themselves concede that they have not adequately pled the "interconnections among components

of these entities." *See id.* at ¶ 61.  Without any allegations as to the specific inner-workings of

the purported enterprise, this Court is left to speculate as to how these alleged members formed

the network, how the alleged members worked together to further the purported enterprise, and

how the alleged members operated within the continuity of the structure.

Plaintiffs cannot evade these requirements through conclusory allegations.  *See Jones v.

Nat'l Communs. & Surveillance Networks*, 409 F.Supp.2d 456, 474 (S.D.N.Y. 2006) (dismissing

complaint because of conclusory nature of enterprise and mail and wire fraud allegations). To

survive a motion to dismiss, a complaint must include allegations regarding how the members

"'formed the network,' how they worked together and how they operated with the 'continuity of

structure.'" *In re Smithkline Beecham*, 108 F.Supp. 2d 84, 95 (D. Conn. 1999).  A "conclusory

'naming of a string of entities' does not adequately allege an enterprise." *First Capital Asset

Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004).  The Complaint must "explain

each participant's role in the alleged course of fraudulent or illegal conduct." *Id.* at 175.

Plaintiffs create further confusion as to the structure of the purported enterprise by

alleging: "Full Tilt was a beneficiary of the Enterprise's activities, but not all entities associated

with Full Tilt were members of the Enterprise and not all members of the Enterprise conducted

or participated in the illegal activity of the RICO Defendants." *See id.* at ¶ 59.  It is clear from

this allegation that Plaintiffs cannot explain each participant's role in the alleged course of the

fraudulent or illegal conduct, nor can Plaintiffs explain the organizational pattern or system of

authority that existed in the purported enterprise.  All that Plaintiffs have offered this Court is a

list of conclusory allegations as to the existence of a RICO enterprise.  For these reasons,

Plaintiffs' RICO claim should be dismissed.

> **2.      Plaintiffs Fail to Plead that Defendants "Operated or Managed" the Purported Enterprise as Required by Section 1962(c)**

Plaintiffs have also failed to state a claim under section 1962(c) because they have not

adequately pled that Defendants operated or managed the enterprise. The elements of section

1962(c) are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."

*DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).  These elements must be established as to

each individual defendant.  *See id.*  The Supreme Court has held that the phrase "to conduct or

participate" in section 1962(c) means that each defendant, to be liable, must "participate in the

operation or management of the enterprise itself."  *Reves v. Ernst & Young*, 507 U.S. 170, 177,

185 (1993).  This has become known as the "operation and management test."  "In [the Second]

Circuit, the 'operation and management' test is an *extremely rigorous* test."  *United States Fire*

*Ins. Co. v. United Limousine Serv.*, 303 F.Supp.2d 432, 451 (S.D.N.Y. 2004) (emphasis added).

"Operation and management" is narrowly construed; "liability under § 1962(c) may not be

imposed on one who merely carries on or participates in an enterprise's affairs."  *Biofeedtrac*

*Inc. v. Kolinor Optical Enters. & Consultants, S.R.L.*, 832 F.Supp. 585, 590 (E.D.N.Y. 1993)

(internal quotations omitted); *see In re Mastercard Int'l Inc.*, 132 F.Supp.2d 468, 490 (E.D. La.

2001), *aff'd*, 313 F.3d 257 (5th Cir. 2002).   (finding that "[a]llegations of a business relationship

do not indicate that defendants took part in directing the enterprise's affairs").

Here, Plaintiffs fail to pass the "operation and management test."  Plaintiffs' Complaint is

devoid of any allegation as to which entities purportedly took part in directing the enterprise's

affairs.  Plaintiffs' Complaint makes no meaningful distinction as to which Defendants operated

and managed the purported enterprise.  Instead, Plaintiffs simply assert: "Each RICO Defendant

is an owner, director, or principal of the Full Tilt Undertaking or at least one Full Tilt Company,

or is itself a Full Tilt Company, and all are members of the Enterprise."  Pl. Compl. at ¶ 128.

Such conclusory allegations do not pass the "extremely rigorous" "operation and management

test."  At best, Plaintiffs allege some sort of business relationship among the various corporate

entities, but such allegations do not indicate that Defendants took part in directing the enterprise'

affairs.  *See In re Mastercard Int'l Inc.*, 132 F.Supp.2d at 490.  Accordingly, Count II of

Plaintiffs' Complaint should be dismissed for failure to state a claim under section 1962(c).

### 3. Because Plaintiffs Fail to State a Claim Under Section 1962(c), Their Conspiracy Claims Under Section 1962(d) and Count III of the Complaint Must Fail as Well.

Because Plaintiffs fail to state a claim under section 1962(c), their conspiracy claims

under section 1962(d) must fail as well, thereby warranting dismissal of Count III of Plaintiffs'

Complaint. *See R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 93 CIV. 8571 (JGK), 1997

WL 27059 (S.D.N.Y. Jan. 23, 1997) (dismissing plaintiffs' § 1962(d) claim because there were

no underlying substantive violations of the RICO statute); *see also FD Prop. Holding, Inc. v.

U.S. Traffic Corp.*, 206 F.Supp.2d 362, 373 (E.D.N.Y. 2002) ("Because the RICO conspiracy

claim is dependent upon the Section 1962(c) RICO claim, dismissal of that claim mandates

dismissal of the RICO conspiracy claim.").

Plaintiffs' section 1962(d) claim also fails because they have pled only conclusory

allegations of participation in a conspiracy.  Plaintiffs baldly assert: "RICO Defendants, all

members of the Full Tilt Enterprise, conspired to commit, and did commit, wire fraud, bank

fraud, money laundering and other federal and state offenses for the benefit and under the name

and interests of the Full Tilt undertaking."  Pl. Compl. at ¶ 62; *see also id.* at ¶ 140.

Nevertheless, "a RICO conspiracy allegation should be more than a conclusory add-on at the end

of a complaint." *FD Prop. Holding, Inc.*, 206 F. Supp.2d at 373.  Here, allegations in the

Complaint—such that "all the members of the Full Tilt enterprise "conspired to commit, and did

commit" the various alleged violations—are prime examples of the conclusory allegations

insufficient to survive a motion to dismiss.  Plaintiffs' Complaint should, but fails to, state as to

each alleged co-conspirator: "(1) an agreement to join the conspiracy; (2) the acts of each co-

conspirator in furtherance of the conspiracy; [and] (3) that the co-conspirator knowingly

participated in the same." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 640 F.Supp.2d 300, 312

(S.D.N.Y. 2009).  For these reasons, this Court should dismiss Count III of Plaintiffs' Complaint

for failure to state a claim under section 1962(d).

### C.   Plaintiffs Lack Standing to Bring RICO Claims Because They Do Not Allege Injuries Suffered "By Reason of" Defendants' Alleged Conduct.

This Court should also dismiss Plaintiff's RICO claims because Plaintiffs lack RICO

standing.  RICO's civil remedy provision, section 1964(c), provides standing only to a "person"

who is "injured in his business or property **by reason of** a violation of section 1962 [of the RICO

statute]."  18 U.S.C. § 1964(c) (emphasis added). A RICO plaintiff must establish that "the

defendant's violations of the RICO statute caused his injuries in order to have standing for a

RICO claim." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir. 1995).  "This requires a

showing not only that the defendant's alleged RICO violation was the 'but-for' cause or the

cause-in-fact of his injury, but also that the violation was the legal or proximate cause." *Id.*

(citations omitted).

Here, Plaintiffs cannot show that the alleged predicate acts of bank fraud, wire fraud, and

money laundering proximately caused Plaintiffs' alleged injuries.  As an initial matter, Plaintiffs'

failure adequately to allege the predicate acts of bank fraud, wire fraud, and money laundering is

fatal to any claim of proximate causation.  Because Plaintiffs have failed to establish predicate

acts necessary to sustain their RICO claim, they cannot demonstrate the necessary causal link between their purported injuries and any alleged illegal activity undertaken by the Defendants.

Moreover, even if Plaintiffs had adequately alleged the predicate acts underlying their RICO claims, Plaintiffs still have not established a direct link between those alleged acts and any purported injuries they may have ultimately suffered.  Plaintiffs' Complaint lacks any allegation of the specific injuries suffered by Plaintiff.  Instead, Plaintiffs merely clump themselves together with other U.S. players, whom they claim "are wrongfully denied access to approximately $150 million (USD) in funds they deposited in their own Player Accounts."  Pl. Compl. at ¶11.  Plaintiffs have never demonstrated an entitlement to any of the player funds in question because they have not pled a specific dollar injury as a result of being denied access to their online player accounts.  Plaintiffs have no excuse to justify their failure to specify an individual injury in this case because only Plaintiffs know how much has been debited from their personal bank accounts as a result of their online poker activities and because Plaintiffs still have access to their player accounts to determine the status of their credits and debits.  Having failed to allege a specific injury, Plaintiffs lack RICO standing because they cannot demonstrate injury to their "business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiffs' Complaint in its entirety with prejudice.

Dated: August 19, 2011                    Respectfully submitted,


                                          _____/s/___A. Jeff Ifrah_____
                                          A. JEFF IFRAH (Bar No.: AI1627)
                                          Email: jeff@ifrahlaw.com
                                          DAVID B. DEITCH (Bar No.: DD9900)
                                          Email: ddeitch@ifrahlaw.com
                                          IFRAH PLLC
                                          1717 Pennsylvania Avenue, Suite 650
                                          Washington, D.C. 20006-2004
                                          Telephone: (202) 524-4140
                                          Facsimile:  (202) 524-4141

                                          Attorneys for Defendants,
                                          *Tiltware, LLC; Vantage, Ltd.; Filco, Ltd.;*
                                          *Pocket Kings Ltd.; Pocket Kings Consulting Ltd.;*
                                          *Howard Lederer; Chris Ferguson; Jennifer*
                                          *Harman-Traniello; Erick Lindgren; Erik Seidel;*
                                          *Andrew Bloch; Mike Matusow; and*
                                          *Allen Cunningham*