UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVE SEGAL, NICK HAMMER, ROBIN
HOUGDAHL, and TODD TERRY, on
behalf of themselves and others similarly
situated,

                    Plaintiffs,

        v.

RAYMOND BITAR; NELSON BURTNICK;
FULL TILT POKER, LTD.; TILTWARE, LLC;
VANTAGE, LTD; FILCO, LTD.; KOLYMA
CORP. A.V.V.; POCKET KINGS LTD.;
POCKET KINGS CONSULTING LTD.;
RANSTON LTD.; MAIL MEDIA LTD.;
HOWARD LEDERER; PHILLIP IVEY JR.;
CHRISTOPHER FERGUSON; JOHNSON
JUANDA; JENNIFER HARMAN-TRANIELLO;
PHILLIP GORDON; ERICK LINDGREN; ERIK
SEIDEL; ANDREW BLOCH; MIKE MATUSOW;
GUS HANSEN; ALLEN CUNNINGHAM;
PATRIK ANTONIUS, and JOHN DOES 1-100,

                   Defendants.

---

11 Civ. 4521 (LBS)

**MEMORANDUM
& ORDER**

SAND, J.

Defendants Johnson Juanda, Howard Lederer, Chris Ferguson, Jennifer Harman-

Traniello ("Traniello"), Erick Lindgren, Erik Seidel, Andrew Bloch, Mike Matusow, Allen

Cunningham, and Phillip Ivey, Jr. ("Ivey") (collectively, the "Individual Defendants"), and

Tiltware, LLC ("Tiltware"), Vantage, Ltd. ("Vantage"), Filco, Ltd ("Filco"), Pocket Kings Ltd.

("Pocket Kings"), and Pocket Kings Consulting Ltd. ("Pocket Kings Consulting") (collectively.

the "Corporate Defendants") have moved to dismiss the claims against them brought by Steve

Segal ("Segal"), Nick Hammer, Robin Hougdahl, and Todd Terry, on behalf of themselves and a

purported nation-wide class of plaintiffs.

1

Plaintiffs accuse the Corporate Defendants, as well as other non-moving defendants, of violating two provisions of the Racketeer Influence and Corrupt Organizations ("RICO") Act, 18 U.S.C. §§ 1961–1968, by engaging in, and conspiring to engage in, an ongoing pattern of bank fraud, wire fraud, and money laundering.  Plaintiffs accuse all Defendants of conversion.

For the reasons provided below, the motions to dismiss are granted in part and denied in part.

I.      **Background**[1]

This case is one of a number of civil lawsuits brought by and on behalf of online poker players who lost access to money in player accounts they maintained on the online gambling website, fulltiltpoker.com, on April 15, 2011.  On that date—also known as "Black Friday" in the online gambling world—the United States Attorney for the Southern District of New York shut down the websites of the three largest online poker companies then operating in the United States, Full Tilt Poker, Absolute Poker and PokerStars.  Compl. ¶2.   Arrest warrants were also issued for the owners of, and other individuals associated with, the three companies.  *Id*.  In the criminal indictment, the United States accused those individuals of violating, and conspiring to violate, the Unlawful Internet Gambling Enforcement Act ("UIGEA"), 31 U.S.C. §§ 5361–5367, which prohibits those "engaged in the business of betting or wagering" from knowingly accepting most forms of payment "in connection with the participation of another person in unlawful Internet gambling," 31 U.S.C. § 5361.  The indictment also accused individuals associated with Full Tilt Poker and the other poker companies of conspiring to commit bank fraud, wire fraud and money laundering.  Superseding Indictment, United States v. Scheinberg, 10 Cr. 336 (LAK) (Apr. 14, 2011) ("Criminal Indictment").

---

[1] The facts provided in this section are based on the allegations in the Class Action Complaint ("Compl."), filed by Plaintiffs on June 30, 2011.

Soon after the indictment was unsealed, the Department of Justice instituted a civil suit against individuals and entities associated with the three poker companies, seeking forfeiture of all assets and proceeds they derived from their allegedly illegal activities.  Verified Complaint, *United States v. Pokerstars*, 11 Civ. 2564 (Apr. 15, 2011) ("DOJ Civil Complaint").  In connection with the civil and criminal cases, various properties believed to have been involved in, or to derive from, the illegal activity described in the complaints were seized.  *Id.* ¶ 97.  A restraining order was also issued against various bank accounts believed to have been utilized by the defendants in the civil and criminal cases.  *Id.* Ex. C.  At no point, however, were the funds in the Full Tilt Poker player accounts seized.  *Id.* ¶ 105.  Nonetheless, since April 15, 2011, Full Tilt customers have been unable to access their player accounts, or to withdraw the money deposited in them.  *Id.*  ¶ 104.

On June 30, 2011, Plaintiffs filed suit on behalf of themselves and a putative class of Full Tilt Poker account holders, seeking recovery of the approximately $150 million they claimed was locked up in the online player accounts they no longer could access.  *Id*. ¶ 42.  In response, many of the defendants named in their complaint moved, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), to dismiss the claims against them for lack of jurisdiction and failure to state a claim.

## II.     Standard of Review

On a motion to dismiss, a court reviewing a complaint will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Lee v. Bankers Trust Co.*, 166 F.3d 540, 543 (2d Cir. 1999).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through 'factual allegations sufficient to raise a right to relief above the speculative level.'"  *ATSI Commc'ns Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 93 (2d Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 ( 2009). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1940 (citing *Twombly*, 550 U.S. at 570).

Plaintiffs also bear the burden of showing that the court has jurisdiction over the defendants. *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 566-567 (2d Cir. 1996). Prior to discovery, a plaintiff can satisfy this burden by "pleading in good faith . . . legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's prima facie showing may be established solely by allegations." *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). In determining whether a plaintiff has met this burden, courts may not "draw 'argumentative inferences' in the plaintiff's favor." They may, however, "construe jurisdictional allegations liberally and take as true uncontroverted factual allegations." *Robinson v. Overseas Military Sales Corp*., 21 F.3d 502, 507 (2d Cir. 1994) (quoting *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir. 1992)).

In reviewing a complaint, a court is not limited to the four corners of the complaint; a court may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, . . . matters of which judicial notice may be taken, or . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

### III.   Discussion

#### A.  Jurisdiction

Defendants argue that, because they are not New York residents and do not conduct any business in New York, this Court lacks personal jurisdiction over them. In their complaint, Plaintiffs identify two possible bases for this Court's exercise of personal jurisdiction over the

4

defendants: first, 18 U.S.C. § 1965(b), which allows the nationwide service of process with respect to actions brought under 18 U.S.C. § 1964, the federal civil RICO statute;  second, Federal Rule of Civil Procedure 4(k)(I)(A), which grants this Court jurisdiction over defendants reached by New York's long-arm statute, N.Y. C.P.L.R. § 302(a).

### 1.  18 U.S.C. § 1965(b)

18 U.S.C. § 1965(b) allows for the nationwide service of process for claims brought under the civil RICO statute, 18 U.S.C. § 1964, when "the ends of justice require that other parties residing in any other district be brought before the court." 18 U.S.C. § 1965(b).   In order for § 1965(b) to apply, however, the Second Circuit has found that at least one defendant must satisfy the test for personal jurisdiction set forth in 18 U.S.C. § 1965(a).[2]  *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71 (2d Cir. 1998).  Therefore, only in cases where at least one RICO defendant "resides, is found, has an agent, or transacts his affairs" in the district in which the court is located, 18 U.S.C. § 1965(a), can nationwide service of process be effected with respect to the other RICO defendants—and then only if the "ends of justice" require it.

In this case, Plaintiffs have identified no defendants who reside in the Southern District of New York or who employed an agent in the district.  Nor do they allege that any of the defendants can be "found" in the district.  Instead, they assert that the various Defendants identified in the Complaint conducted "significant and continuous business in the State of New York"  through their operation or facilitation of the Full Tilt Poker web portal.  Compl. § 15.  They make no specific allegations, however, that any of the defendants conducted "significant and continuous business" in the Southern District *specifically*, via the Full Tilt Poker web portal.

---

[2] Section 1965(a) provides:  "Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a).

*See* Burt Decl. (identifying New Yorkers who used the Full Tilt Poker web portal but providing no indication of their district of residency or location of play).  Nor have they alleged sufficient facts to establish any of the other bases of jurisdiction under § 1965(a).  For this reason, we find that Plaintiffs have not met their burden of making out legally sufficient allegations of jurisdiction under §1965(b).

### 2.   Federal Rule of Civil Procedure 4(k)(I)(A)

As an alternative basis of jurisdiction, Plaintiffs invoke Federal Rule of Civil Procedure 4(k)(I)(A), which grants federal courts jurisdiction over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," and N.Y. C.P.L.R. §302(a) (New York's "long arm statute").  N.Y. C.P.L.R. § 302(a) provides in relevant part that New York courts of general jurisdiction shall have personal jurisdiction over any defendant who

> 1.  transacts any business within the state or contracts anywhere to supply goods or services to the state…[or]
> 3.  commits a tortious act without the state causing injury to person or property within the state [and] …
>> ii.  expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

NY CLS CPLR § 302(a).  Plaintiffs claim that both § 302(a)(1) and § 302(a)(3)(ii) vest this Court with jurisdiction over the Corporate and Individual Defendants.

### a.   Jurisdiction under § 302(a)(1)

"To determine the existence of jurisdiction under section 302(a)(1), a court must decide (1) whether the defendant 'transacts any business' in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-251 (2d Cir. 2007).  A defendant "transacts … business" in New York, with respect to §302(a)(1), when it "purposefully avails itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws." *McKee Elec. Co. v. Rauland-Borg Corp.*, 229 N.E.2d 604, 607 (N.Y. 1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).   A cause of action "arise[s] from such a business transaction" when there is "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Henderson v. INS*, 157 F.3d 106, 123 (2d Cir. 1998) (internal quotation marks omitted).

Plaintiffs claim that the Corporate Defendants transacted business in New York by operating or facilitating the operation of the Full Tilt website, fulltiltpoker.com, which New York residents used to gamble online.  They claim that the Individual Defendants  transacted business in New York when they played against New York consumers in online poker games on the Full Tilt website and thereby induced them to use the website.

### i.  The Corporate Defendants

With respect to the Corporate Defendants, we agree that by operating or facilitating the operation of the Full Tilt poker website, they transacted business in New York under the "purposeful availment" test.  Corporations purposefully avail themselves of the privilege of conducting business in a state when they operate a website that "projects itself" into New York by dynamically interacting with New York users.  *Lenahan Law Offices, LLC v. Hibbs*, No. 04-CV-6376, 2004 U.S. Dist. LEXIS 30528, at *12-20 (W.D.N.Y. Dec. 22, 2004).   One of the ways in which a corporate website can project itself into New York is by allowing in-state residents to purchase the company's goods and services online.  *Chloe v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 170-171 (2d Cir. 2010) (finding defendant corporation which maintained a "highly interactive website offering… bags for sale to New York consumers" transacted business in New York); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565-566 (S.D.N.Y. 2000) (finding defendant mortgage origination company that maintained two web sites which allowed New

York consumers to apply for loans online and conduct internet chats with company representatives transacted business in New York); *Student Advantage, Inc. v. International Student Exch. Cards, Inc*., No. 00 Civ. 1971, 2000 U.S. Dist. LEXIS 13138, at *12-13 (S.D.N.Y. Sept. 12, 2000) (corporation transacted business in New York when its website "allegedly induced New York merchants to contract with [it]").

In this case, the Full Tilt website not only allowed New York residents to purchase the company's services while in the state; it also allowed them to consume those services while sitting in their New York residences. The website therefore satisfies the "transacts any business" prong of the §302(a)(1) jurisdictional test, with respect to those corporations that maintained it. *See Citigroup Inc.,* 97 F. Supp. at 565 (noting that jurisdiction attaches to corporations that "*maintain*… an interactive web site"); *Student Advantage,* No. 00 Civ. 1971, at 10 (same).[3] This group includes Pocket Kings, the corporate entity responsible for the daily operation of the Full Tilt website, Compl. ¶ 30, and Vantage and Filco, both of which helped maintain the website by registering new player accounts, managing the deposit of money into, and the withdrawal of money from, player accounts, and allowing customers to take part in specific games and transactions while on the Full Tilt website. *Id.* ¶¶ 27, 28.

The website also satisfies the "transacts any business" prong of the jurisdictional test with respect to Tiltware and Pocket Kings Consulting, the remaining two Corporate Defendants. Neither of these corporations appear to have directly maintained the website.[4] Nonetheless, they provided valuable services to it that, were they not around, the website maintainers would have

---

[3] Although courts have not explained what it means to "maintain" a website, we adopt the ordinary language meaning of the term, which is—as provided by the Merriam-Webster Online Dictionary—"to keep in an existing state (as of repair, efficiency, or validity) **:** preserve from failure or decline." http://www.merriam-webster.com/dictionary/maintain. Hence, we find that all those defendants who worked to "keep [the website] in an existing state… of repair [and] efficiency" transacted business in New York.

[4] According to the allegations in the complaint, Tiltware developed the software for the website. *Id.* ¶ 26. Pocket Kings Consulting meanwhile provided "technology and marketing consulting services" for Full Tilt Poker. *Id.* ¶ 31.

had to do on their own.  In this capacity they  functioned as "agents" of the companies that maintained the website, to whom jurisdiction can be imputed.  *See Frummer v. Hilton Hotels Int'l Inc.,* 281 N.Y.S.2d 41, 57 (N.Y. 1967) (courts can impute jurisdiction to foreign corporations when corporations that transact business in New York do on their behalf "all the business which [the foreign corporation] would do were it here by its own officials").

We also find that the cause of action "arises from" the business transactions—namely, the website activity—that occurred in New York.  Plaintiff Steve Segal is a New York resident.  Compl. ¶ 19.  He deposited funds in his player account in New York and consumed the website's services while in New York.  *Id.* ¶ 16.  His injuries, and those of the other New York residents who maintained player accounts with Full Tilt appear the direct result of the commercial activities they engaged in while in New York.  *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*., 450 F.3d 100, 104 (2d Cir. 2006) (holding that New York's long-arm nexus requirement is satisfied unless "the event giving rise to the plaintiff's injury had, at best, a tangential relationship to any contacts the defendant had with New York").  Section 302(a)(1) thus vests this Court with jurisdiction over the Corporate Defendants.

This finding of jurisdiction satisfies the requirements of the Due Process Clause.  *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) ("If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution.").  By maintaining a website that sold services to New York consumers—or acting as the agents for those corporations that did—Corporate Defendants purposefully directed their activities towards the New York market and in so doing established the "minimum contacts" required by the Due Process Clause.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297-298 (1980) ("The forum State does not exceed its powers under the Due Process Clause if it asserts personal

jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."); *Queen Bee,* 616 F.3d at 171 ("[J]urisdiction is appropriate in New York [under the Due Process Clause] because Queen Bee has developed and served a market for its products there.").  Defendants have provided no evidence, in light of the threshold showing of minimum contacts, that render the exercise of jurisdiction over them unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.").  Accordingly, the  Corporate Defendants' motion to dismiss for lack of personal jurisdiction is denied.[5]

### ii.  The Individual Defendants

With respect to the Individual Defendants, the case for exercising personal jurisdiction under  § 302(a)(1) is considerably weaker.  Plaintiffs make no allegations that any of the Individual Defendants helped maintain or operate the Full Tilt Poker website.   Instead, they allege only that these individuals played poker games against New York consumers on the

---

[5] Defendants Vantage and Filco also challenge the jurisdiction of this Court on service of process grounds.  They argue that, because Plaintiffs have not provided, as proof of service, "the server's affidavit" required by Federal Rule of Civil Procedure 4(l)(1), they have not effectively been served and are not therefore proper parties to the lawsuit. Defs.' Mem. Law. Supp. Mot. Dismiss, at 10–11 n.5.  This argument is unpersuasive.  Rule 4(l)(1) only applies to service on defendants within the United States.  For defendants served outside the United States, such as Vantage and Filco, Rule 4(l)(2) instead governs.  Under Rule 4(l)(2), proof of service must be demonstrated in one of two ways. Fed. R. Civ. P. 4(l)(2).  If service was made by means of the relevant treaty or convention, service must be proved as specified in that treaty or convention.  Fed. R. Civ. P. 4(l)(2)(A).  However, if service was effected by a means allowed, but not specified, by the relevant treaty or convention, all that is required as proof of service is a "receipt signed by the addressee, or… other evidence satisfying the court that the summons and complaint were delivered to the addressee." Fed. R. Civ. P. 4(l)(2)(B).  In this case, Filco and Vantage were served pursuant to Article 10 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Nov. 15, 1965, 20 U.S.T. 361. Article 10 allows, but does not specify, for service of judicial documents by "judicial officers, officials or other competent persons of the State of origin," when the State of destination does not object. *Id.,* art. 10.  Rule 4(l)(2)(B) thus governs proof of service.  Plaintiffs have provided, as Rule 4(l)(2)(B) requires, signatures of receipt, signed on both defendants' behalf.  Dkt. # 26, 32.  We therefore consider both defendants properly served.

website, and that they helped promote the brand by playing live poker games that were broadcast into New York. These allegations are insufficient to establish jurisdiction under § 302(a)(1).

Even assuming *arguendo* that playing online poker against a New York consumer, or playing in a poker game broadcast in New York is sufficient to constitute a transaction of business in New York, thereby satisfying the first prong of the § 302(a)(1) jurisdictional test, plaintiffs still have not alleged sufficient facts to establish the second prong of § 302(a)(1): namely, that the claims against the Individual Defendants "arose out of" these online games. "For a tort claim to arise out of transaction of business in New York, the connection between the transaction and the claim must be direct." *Mantello v. Hall*, 947 F. Supp. 92, 100 (S.D.N.Y. 1996). There is, however, no direct connection between the Individual Defendants' participation in the online poker games and the conversion claims against them. Defendants' acts may have induced New York consumers to use the Full Tilt website, as Plaintiffs allege. However, the claims alleged against the Individual Defendants do not relate to consumers' decision to use the website, or to establish the online player accounts that would allow them to do so. *See* Compl. ¶ 7 (noting that "U.S. customers who played for real-money on the Full Tilt website were required to maintain a Player Account with Full Tilt"). The claims instead relate to consumers' inability to access, or withdraw money from, their player accounts after the website was shut down on April 15, 2011.

In similar cases, where the acts alleged to establish jurisdiction do not overlap in any respect with the acts that establish the claim, courts have found the connection to be too attenuated to support jurisdiction under §302(a)(1). *See, e.g., Penachio v. Benedict*, 2010 U.S. Dist. LEXIS 119052, 12-13 (S.D.N.Y. Nov. 9, 2010) (finding that defamation action did not arise out of defendants' actions in New York because none of "the acts of publication, of distribution and of circulation which underlie the alleged grievances" occurred in New York

11

(quoting *American Radio Ass'n, AFL-CIO v. A.S. Abell Co.*, 296 N.Y.S.2d 21, 23 (N.Y. Sup. Ct. 1968)); *Mantello,* 947 F. Supp at 100 (finding copyright claim involving a Florida play did not arise out of the director's decision to hire New York actors, or his payments of money to the New York licensing agency); *Talbot v Johnson Newspaper Corp.*, 522 N.E.2d 1027, 1027 (N.Y. 1988) (holding that defamation claim brought by university football coach against a former student did not "arise out of" that student's earlier decision to pursue a college degree in New York). We find the same to be true here.

We note that the question of whether an action arises out the transaction of business in New York is a "fact-specific one, and when the connection between the parties' activities in New York and the claim crosses the line from 'substantially related' to 'mere coincidence' is not always self-evident." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Nonetheless, given the particular facts of the case, we conclude that the claims alleged against the Individual Defendants do not arise out of their participation in the online poker games, or the other promotional activities they undertook on Full Tilt's behalf. Section 302(a)(1) therefore does not establish the jurisdiction of this Court with respect to the Individual Defendants.

### b.    Jurisdiction under § 302(a)(3)(ii)

Nor does N.Y. C.P.L.R. § 302(a)(3)(ii) vest this Court with jurisdiction over the Individual Defendants. To establish jurisdiction under § 302(a)(3)(ii), a plaintiff must demonstrate that: "(1) the defendant's tortious act was committed outside New York, (2) the cause of action arose from that act, (3) the tortious act caused an injury to a person or property in New York, (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York, and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v. Am. Buddha*, 640 F.3d 497,

498-499 (2d Cir. 2011).   The allegations against Individual Defendants fail the first element of the 302(a)(3)(ii) jurisdictional test insofar as they fail to demonstrate, not only that any of the Individual Defendants committed a tortious act outside of New York, but that the Individual Defendants committed a tortious act of any sort at all.

Plaintiffs allege that because all of the Individual Defendants are "shareholder[s] and [director[s] of… Full Tilt and/or one or more Full Tilt Companies," Compl. ¶¶ 36–40, 42–45, 47, they participated in the conversion of the player accounts that occurred on or after April 15, 2011, when customers who attempted to withdraw the money in their player accounts were barred from doing so.   Under New York law, however, individuals are not subject to jurisdiction under § 302(a)(3)(ii) merely because they are shareholders or directors of companies that are subject to jurisdiction under § 302(a)(3)(ii).   Jurisdiction based on the tortious actions of a corporate entity extends to its shareholders and directors only when they are shown to have personally participated in those tortious acts.   *In re Terrorist Attacks on Sept. 11, 2001*, 718 F. Supp. 2d 456, 484 (S.D.N.Y. 2010) ("The culpable conduct of a corporation or other organization cannot give rise to jurisdiction over a non-resident officer based solely on his title, without any showing that he was personally involved as a primary actor in the conduct that is the subject of the litigation."); *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992) ("Individual officers are not subject to jurisdiction in New York merely because jurisdiction can be obtained over the corporation here… [Instead], the transaction at issue performed by the corporation here must be with the knowledge and consent of the officer and the officer must have exercised control over the corporation in the transaction.").   Plaintiffs provide no allegations that any of the Individual Defendants knew about or consented to the player accounts on or after April 15, 2011, or that they personally participated in any other way in blocking Full Tilt customers' access to their accounts.

Plaintiffs argue that jurisdiction over the Individual Defendants exists under §302(a)(3(ii) because, even if the Individual Defendants were not personally involved in the acts of conversion themselves, they nonetheless "contributed to" them by playing poker on the Full Tilt poker website and thereby inducing players to open the accounts that were subsequently converted. Pls.' Mem. Law Opp. Defs.' Mots. Dismiss, at 13.  This argument fails.  To establish contributory, or "aiding and abetting" liability under New York law, plaintiffs must demonstrate that "the defendant (1) knew that another's conduct constituted a breach of duty and (2) gave substantial assistance or encouragement to the other." *Miele v. Am. Tobacco Co.,* 770 N.Y.S.2d 386, 392 (App. Div. 2003) (quoted in *Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 515 F. Supp. 2d 298, 321 (N.D.N.Y 2007).  Plaintiffs have alleged no facts demonstrating that the Individual Defendants knew that the other defendants' actions constituted a breach of duty; nor have they alleged facts demonstrating that any of the Individual Defendants provided "substantial assistance to encouragement" to those who actually committed the tortious acts.  Plaintiffs  have therefore failed to establish jurisdiction with respect to the Individual Defendants under either § 302(a)(1) or § 302(a)(3)(ii).  Accordingly, the claims against them must be dismissed.

### B.  Merits

Having established the existence of personal jurisdiction with respect to the Corporate Defendants (hereinafter "Defendants"), we now consider their substantive objections to the Plaintiffs' allegations of conversion, racketeering and conspiracy.

### 1.  Conversion

To state a claim for conversion under New York law, plaintiffs must (1) "show legal ownership of, or a superior possessory right in, the disputed property"  and (2) "that the defendant exercised an unauthorized dominion over that property to the exclusion of the plaintiff's rights." *Middle East Banking Co. v. State Street Bank International*, 821 F.2d 897, 906

14

(2d Cir. 1987) (internal quotes omitted).  They must also demonstrate that the property in question is a "specific, identifiable thing." *Cruickshank & Co. v. Sorros*, 765 F.2d 20, 25 (2d Cir. 1985).  Plaintiffs allege that Defendants committed the tort of conversion when they refused to allow Plaintiffs to withdraw the money stored in their player accounts on or after April 15, 2011.  Defendants move to dismiss this claim on several grounds.  They argue that the merely temporary refusal to allow Full Tilt customers to withdraw money from their player accounts does not constitute an act of unauthorized dominion under New York law, and therefore cannot serve as the basis for Plaintiffs' conversion claim.  They also argue that Plaintiffs have failed to establish that the money stored in the accounts constitutes a "specific, identifiable thing." Finally, they argue that Plaintiffs have failed to establish which of the various Corporate Defendants actually had control over the player funds and are therefore liable for conversion.

Defendants' first argument is not persuasive.  The interference with another's property interest need not be permanent in order to serve as the basis for a conversion claim.  As a court in the Eastern District of New York noted, "[t]he essence of the tort of conversion is not the acquisition of the property but rather the wrongful deprivation of another's property."  *Rose v. AmSouth Bank of Fla.,* 296 F. Supp. 2d 383, 397 (E.D.N.Y. 2003)).  All that New York law requires is that the interference be *substantial*. *Harper & Row, Publishers v. Nation Enters*., 723 F.2d 195, 201 (2d Cir. 1983); *Pearson v. Dodd*, 410 F.2d 701, 707 (D.C. Cir. 1969).  A claim for conversion will not therefore lie when the interference with another's property or possessory interests lasts only several hours. *See, e..g, Harper & Row,* 723 F.2d at 201.   In this case, however, the interference with Plaintiffs' ability to exercise control over their property has lasted far more than several hours.  It has lasted over six months, and may in fact—despite Full Tilt Poker's promises—end up being permanent.  Given these facts, we find  Plaintiffs have

more than adequately alleged an act of "unauthorized dominion" sufficient to state a claim for conversion.

Defendants' second argument is similarly unpersuasive.   It is well-settled law in New York that money that is kept in a segregated account, or turned over to another to be used for a specific purpose, is sufficiently identifiable to serve as the basis for a conversion claim. *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.,* 2010 U.S. Dist. LEXIS 109471, 32-33 (E.D.N.Y. Oct. 14, 2010); *Krys v. Sugrue* (*In re Refco Inc. Sec. Litig.*), Nos. 07-md-1902, 08-cv-3065, 08-cv-3086, 08-cv-7416, 08-cv-8267, 2010 U.S. Dist. LEXIS 33642, at *120-122 (S.D.N.Y. Mar. 1, 2010); *Newbro v. Freed*, 409 F. Supp. 2d 386, 394-395 (S.D.N.Y. 2006); *Payne v. White*, 477 N.Y.S.2d 456, 458 (N.Y. App. Div. 1984).   In this case, Plaintiffs allege that they turned their money over to Full Tilt Poker for a specific purpose: namely, so that it could be used for placing bets on online poker games.   They also allege that the money was maintained in segregated accounts, to which players had full access prior to April 15, 2011.   These allegations are sufficient to establish the specific identifiability of the property in question.

Defendants' third argument is more persuasive.   Plaintiffs who bring conversion claims against multiple defendants are not required to specify in their complaint  "which defendant received, has possession of the funds, or which of them has or had the power to return the funds." *Louros v. Cyr*, 175 F. Supp. 2d 497, 515 (S.D.N.Y. 2001).   They are required, however, to "indicate clearly the defendants against whom relief is sought and the basis upon which the relief is sought against the particular defendants." *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 219-220 (S.D.N.Y. 1997) (quoting  *Mathews v. Kilroe*, 170 F. Supp. 416, 417 (S.D.N.Y. 1959).   In other words, they must show "that each individual defendant . . . played some role" in the conversion. *Precision Assocs. v. Panalpina World Transp.*,  DOCKET,  2011 U.S. Dist. LEXIS 51330, at *53-54 (E.D.N.Y. Jan. 4, 2011).

Plaintiffs have pled sufficient facts to establish a plausible inference that defendants Pocket Kings, Vantage and Filco "played some role" in the conversion.  The fact that the three defendants worked together to maintain the Full Tilt website makes it plausible to infer that they also worked together to block  Plaintiffs' access to the money in their accounts.  This is sufficient to state a claim of conversion against them under New York law.  *See In re Refco,* 2010 U.S. Dist. LEXIS 33642, at *124 (S.D.N.Y. Mar. 1, 2010) (plaintiffs need only demonstrate that "assets were taken by [defendants] for [their] own benefit and not returned" in order to state a claim for conversion under Rule 8(a));  *Louros,* 175 F. Supp. 2d at 515 ("plaintiffs adequately plead claims of conversion" by alleging facts demonstrating that "all the named defendants worked . . .  in concert to effect the banking scheme" that deprived plaintiffs of their property).

However, Plaintiffs have not pled sufficient facts to establish a claim for conversion against either Tiltware or Pocket Kings Consulting.  As discussed above, although both Tiltware and Pocket Kings Consulting provided valuable services to the Full Tilt Poker website, they were not themselves responsible for its daily operation.  The mere fact that Full Tilt Poker customers maintained player accounts on the website that they subsequently could not access is therefore insufficient to establish a conversion claim against these defendants.  Nor have Plaintiffs alleged any additional facts, demonstrating that either company exercised control over the player accounts, or played any role in the decision to prevent Full Tilt Poker customers from withdrawing the money in their accounts.

We therefore deny Defendants' motion to dismiss the conversion claims against defendants Pocket Kings, Vantage and Filco but grant it with respect to Tiltware and Pocket Kings Consulting.  However, in the interest of justice, we grant Plaintiffs leave to amend the Complaint to better detail the role that Tiltware and Pocket Kings Consulting played in the

alleged conversion.  Fed. R. Civ. P. 15(a) ("[L]eave to amend shall be freely given when justice so requires.").

### 2.  RICO

Plaintiffs accuse Defendants of violating two provisions of the civil RICO statute: 18 U.S.C. § 1962(c), which prohibits any person from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt,"  and 18 U.S.C. §1962(d), which makes it "unlawful for any person to conspire to violate" § 1962(c).  They claim that Defendants violated these provisions when, in association with other individual and corporate defendants named in the Complaint, they committed and conspired to commit multiple acts of wire fraud, bank fraud and money laundering, as defined in 18 U.S.C. §§1343, 1344 and 1956, respectively.  They claim that Defendants engaged in these acts in order to ensure the continuing flow of funds from domestic players to Full Tilt Poker, despite the increasing reluctance by banks and other financial institutions to process gambling transactions and, in 2006, the passage of the UIGEA.

Defendants move to dismiss both claims on a variety of grounds.  First, they argue that Plaintiffs fail to plead the claims with sufficient particularity to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  Second, they argue that Plaintiffs have failed to satisfactorily allege any of the predicate acts, and therefore cannot establish that any of the defendants engaged in a "pattern of racketeering activity," as both § 1962(c) and § 1962(d) require. Third, they argue that Plaintiffs have failed to adequately allege a RICO enterprise. Fourth, they challenge the sufficiency of the § 1962(d) claim. Finally, they challenge Plaintiffs' standing to bring either claim.  We need not reach the merits of most of these arguments, however, because we find that Plaintiffs have no standing to bring the RICO claims, and on that ground dismiss.

Under RICO's civil remedy provision, 18 U.S.C. § 1964(c), a plaintiff will have standing to sue if he was "injured in his business or property by reason of a violation of" the civil RICO statute. 18 U.S.C. § 1964(c). To establish that the injury he sustained was caused "by reason of" a RICO violation, a civil plaintiff must demonstrate that the RICO violation was not merely its "but for" cause but was its proximate or legal cause as well. *Holmes v. Sec. Investor Prot. Corp*., 503 U.S. 258, 268 (1992). To establish proximate cause, a RICO plaintiff must show "some direct relation between the injury asserted and the injurious conduct alleged." *Hemi Group, LLC v. City of New York*, 130 S. Ct. 983, 989 (2010) (quoting *Holmes*, 503 U.S. at 268-269). "A link that is too remote, purely contingent, or indirect is insufficient." *Hemi,* 130 S. Ct. at 989 (internal punctuation removed).

In this case, Plaintiffs assert that they were injured in their business or property when they lost the ability to withdraw the money in their player accounts on April 15, 2011. They allege that this injury was proximately caused by Defendants' violations of § 1962(c) and § 1962(d) because it was these violations that caused the U.S. Attorney's Office to shut down the Full Tilt Poker website and seize its assets, thereby effectively precluding Plaintiffs' from being able to withdraw their money from their player accounts. Compl. ¶¶ 137, 147.

This is too indirect a chain of causation to establish proximate cause. The Supreme Court has made clear that the only "compensable injury flowing from a [RICO] violation… necessarily is the harm caused by [the racketeering] acts." *Anza v. Ideal Steel Supply Corp*., 547 U.S. 451, 457 (2006). As a result, when the direct cause of plaintiff's injury is not the act or actions that establishes their RICO liability, courts generally refuse to find proximate causation, or standing under § 1964(c). Hence, in *Anza,* the Supreme Court held that the plaintiff steel company, Ideal Steel Supply, had no standing to sue its competitor, National Steel Supply, for fraudulently failing to charge or pay sales taxes in violation of 18 U.S.C. § 1962(c). Ideal argued that it was

injured "by reason of" National Steel's racketeering activity because the tax fraud that served as the basis for its RICO liability allowed National Steel to undercut Ideal's prices, thus harming its business.  The Court found this to be too indirect a chain of causation to sustain standing under § 1964(c)  because the set of actions that directly caused Ideal's harms—namely, National Steel's decision to sell its goods at lower prices—was entirely distinct from the set of actions—namely, the tax fraud—that constituted the RICO violation.  *Anza*, 547 U.S. at 458.  *See also Hemi Group, LLC v. City of New York,* 130 S. Ct. 983, 990 (2010) (affirming the *Anza* principle).

The same principle applies to this case.  At this stage in the litigation it remains unclear whether the direct cause of Plaintiffs' injuries was the decision by the U.S. Attorney's office to temporarily shut down the Full Tilt Poker website and seize the company's assets or was instead, as Plaintiffs' conversion allegations suggest, the subsequent decision by one or more of the Defendants to halt player withdrawals from the Full Tilt Poker website.  What is clear is that in neither case was the direct cause of the injuries the racketeering offenses alleged in the complaint.  Plaintiffs' allegations therefore establish too attenuated a chain of causation to support standing under § 1964(c).  Indeed, the Second Circuit has held on multiple occasions that harms caused by the exposure of defendants' racketeering activity, rather than by the activity itself, do not vest private plaintiffs with standing to sue under § 1964(c).  *See, e.g., McBrearty v. Vanguard Group, Inc.,* 353 Fed. App'x. 640, 642 (2d Cir. 2009) (denying standing to private plaintiffs whose injuries were "not the direct result of the RICO violation—the owning and/or financing of illegal gambling—but rather [were] the result of the subsequent 'government crackdown' on the illegal gambling"); *Lewis ex rel. American Express Co. v. Robinson (In re American Express Co. Shareholder Litig.),* 39 F.3d 395, 400 (2d Cir. 1994) (denying standing because Plaintiff's injuries were caused by the public exposure of defendants' alleged RICO violations, rather than the RICO violations themselves).  Therefore, even assuming *arguendo*

20

that it was the seizure of Full Tilt Poker assets by the U.S. Attorney's Office on April 15, 2011 that was the direct cause of Plaintiff's injuries, this would not establish a sufficiently direct causal link between the racketeering offenses and Plaintiffs' injuries to support standing under Second Circuit precedents.

Nor do normative considerations mitigate in favor of granting Plaintiffs standing. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (U.S. 1992) (noting that "[a]t bottom, the notion of proximate cause reflects 'ideas of what justice demands, or of what is administratively possible and convenient'") (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 41, p. 264 (5th ed. 1984)).  As we concluded above, Plaintiffs have a viable state common law claim for conversion against at least some of the Defendants named in the complaint,  under which they may recover for the damages they have suffered as a result of Defendants' wrongdoing.   We see therefore no need to grant Plaintiffs the right to seek to recover treble damages for what appears to be a simple claim of state law conversion—albeit one predicated on a grand scale.  *See* 18 U.S.C. § 1964(c).  The fact that the government is independently prosecuting the racketeering offenses alleged in the complaint means also that there is no need for the private plaintiffs to stand in as "private attorneys general" in this case. *Holmes,* 503 U.S. 258, 269-270 (1992).

We thus conclude that Plaintiffs do not have standing to sue under § 1964(c). Accordingly we grant Defendants' motion to dismiss both RICO claims.

## IV.    Conclusion

For the foregoing reasons, the motion to dismiss all claims against defendants Juanda, Lederer, Ferguson, Traniello, Lindgren, Seidel, Bloch, Matusow, Cunningham, and Ivy's motion to dismiss is GRANTED.  The motion to dismiss the conversion claim against defendants Tiltware and Pocket Kings Consulting is GRANTED.  The motion to dismiss the 28 U.S.C. §

1962(c) and § 1962(d) claim against all defendants is also GRANTED.  All other motions to

dismiss are DENIED.  Leave to amend is granted with respect to those claims identified above.[6]

SO ORDERED.

Dated:  January 3⊘, 2012
New York, NY

_____
U.S.D.J.

---

[6] The Court has considered all of the parties' other arguments and found them to be moot or without merit.